CLARK v. CHICAGO, R. I. & P. RY. CO. et al.

(District Court, W. D. Missouri, W. D. March 9, 1912.)

No. 3,779.

1. REMOVAL OF CAUSES (§ 36*)—PARTIES—FRAUDULENT JOINDER.

Fraud, if it exists, in joining a resident with a nonresident defendant to prevent a removal of the cause to a federal court, and is appropriately developed, justifies the court in disregarding a joinder otherwise fair on its face, and in taking jurisdiction of the case transferred to it for diversity of citizenship, notwithstanding such joinder.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 79; Dec. Dig. § 36.*]

2. REMOVAL OF CAUSES (§ 86*)—PARTIES—FRAUDULENT JOINDER.

Mere allegation of fraud in the joinder of a resident with a nonresident defendant without facts other than such as disclose an intention to defeat federal jurisdiction is insufficient to establish a fraudulent joinder, but facts must be shown, indicating that plaintiff, not only joined the resident defendant for the purpose of preventing a removal, but also knew, or had sufficient reason in law to know, at the time of such joinder that he had no cause of action against such defendant as a matter of law.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 132, 166–179; Dec. Dig. § 86.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** REMOVAL OF CAUSES (§ 107*)—PARTIES—FRAUDULENT JOINDER—DETERMINA-
TION.

Where it is alleged that a resident was fraudulently joined as a party to prevent removal of the cause to the federal court, such court on a proper petition for removal may examine the merits of the case sufficiently to determine whether the allegations of the complaint, by reason of which a nonresident defendant may be sued in a state court, have been fraudulently and fictitiously made for the purpose of preventing a removal, but it is not necessary that plaintiff should make it appear that his action will ultimately succeed as against the resident defendant, it being sufficient that there is reasonable ground from the existing state of law and facts to believe that the cause of action has merit, and has been stated in good faith.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 178, 220, 225–234; Dec. Dig. § 107.*]

**4.** REMOVAL OF CAUSES (§ 107*)—PARTIES—FRAUDULENT JOINDER—TRIAL.

Where fraud in joining a resident defendant to defeat a removal of the cause to the federal courts does not otherwise appear, and cannot otherwise be inferred, the inquiry into the matter of fraudulent joinder may not go to the extent of a trial of the whole case on the merits.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 178, 220, 225–234; Dec. Dig. § 107.*]

**5.** REMOVAL OF CAUSES (§ 107*)—PARTIES—FRAUDULENT JOINDER—BURDEN OF PROOF.

Where a removal petition alleges a fraudulent joinder of a resident with a nonresident defendant, the burden of proof is on the removing defendant to establish the fact.

[Ed. Note.—For other cases. see Removal of Causes, Cent. Dig. §§ 178, 220, 225–234; Dec. Dig. § 107.*]

**6.** REMOVAL OF CAUSES (§ 107*)—PARTIES—FRAUDULENT JOINDER—MASTER AND SUPERINTENDING SERVANT.

Plaintiff, an employe in a railroad roundhouse, was injured while assisting another workman in raising one of defendant's engines by means of a jack. He joined defendant railroad company, a nonresident, and its foreman in the roundhouse, a resident, as defendants, charging that the jack was defective, and that the foreman who had charge of and had superintendence over plaintiff and his fellow servants negligently required plaintiff and the person whom he was assisting to use the jack, when, he knew, or by the exercise of ordinary care might have known, its defective condition, and that it would be likely to cause injury. On plea to the jurisdiction it was contended that the roundhouse foreman directed the use of the jack with knowledge that it was unsafe. *Held,* that it does not sufficiently appear that the foreman's act was mere nonfeasance, for which the railroad company alone would be liable, and that the facts do not necessarily indicate, as a matter of law, that the foreman was not also liable, and, consequently, that his joinder was fraudulent.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 178, 220, 225–234; Dec. Dig. § 107.*

Fraudulent joinder of parties to prevent removal, see note to Offner v. Chicago & E. R. Co., 78 C. C. A. 362.]

**7.** REMOVAL OF CAUSES (§ 107*)—PARTIES—JOINDER—NONRESIDENT DEFENDANTS.

On a petition for the removal of a cause, alleging fraud in the joinder of a resident with a nonresident defendant, it is not the rule in this circuit that all doubts should be resolved in favor of the jurisdiction of the state court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 178, 220, 225–234; Dec. Dig. § 107.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At Law. Action by William A. Clark against the Chicago, Rock Island & Pacific Railway Company and another. On plea to the jurisdiction. Sustained.

Horace Kimbrell and Martin J. O'Donnell, for plaintiff.

M. A. Lowe and Sebree, Conrad & Wendorff, for defendants.

VAN VALKENBURGH, District Judge. The defendant railroad removed the cause to this court on the ground of diversity of citizenship, asserting that the defendant Murphy is neither a proper nor necessary party to the proceeding, but, on the contrary, that he was fraudulently joined with the defendant company to prevent removal to this court. In the petition for removal the defendant railroad company sets up the facts upon which this charge of fraudulent joinder is based, and alleges that the facts stated were well known to the plaintiff, and that plaintiff well knew, and must have known, that no cause of action existed against the defendant Murphy. Plaintiff has filed a plea to the jurisdiction of this court, in which he denies the allegations of fraud in the petition for removal and the facts upon which the same are based, and asserts that said allegations are merely conclusions of the pleader, and are insufficient to support the introduction of any testimony in support of the charge of fraud. At the hearing, upon the plea to the jurisdiction, the defendant railroad introduced the defendant Murphy and the plaintiff, and examined them with reference to the facts bearing upon the question of good faith of the plaintiff in making the joinder complained of.

Some confusion seems to exist in the minds of counsel as to what facts and circumstances will justify a federal court in reaching the conclusion that a fraud has been perpetrated or sought to be perpetrated to defeat its jurisdiction, and what may be the scope of its inquiry for the purpose of determining such facts and circumstances. This confusion arises, no doubt, from observations, made by the courts in the decided cases, called forth by the special facts of the case then under consideration.

[1] There can be no doubt that fraud, if it exists, and is appropriately developed, justifies the court in disregarding a joinder otherwise fair upon its face, and that it is the duty of the court to guard against such frauds and evasions. As was said in Shaffer v. Union Brick Co. (C. C.) 128 Fed. 97:

"It is manifestly both unsafe and unsound to allow the ultimate determination of the right of removal from the state to the federal courts to rest upon the ingenuity of counsel drafting the pleadings; for, as said by Mr. Justice Miller in Board of County Com'rs v. Kansas Pac. Ry. Co., 4 Dill. 277 [Fed. Cas. No. 502]: 'It would be a very dangerous doctrine—one utterly destructive of the right which a man has to go into the federal courts on account of his citizenship—if the plaintiff in the case, in instituting his suit, can, without any right or reason or just cause join persons who have not the requisite citizenship, and thereby destroy the rights of parties in federal courts. We must, therefore, be astute not to permit devices to become successful which are used for the very purpose of destroying that right.'"

It may not be unprofitable to advert briefly to the attitude of the Supreme Court upon this question in order that a consistent and stable rule may be laid down for guidance in such cases. It will be

sufficient to begin with the case of Chesapeake & Ohio Ry. Co. v. Dixon, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121, where the railroad company sought to remove the case in which it was joined with its engineer and fireman as codefendants, and in which it was alleged that the "negligence was the joint negligence of all the defendants," on the ground that its codefendants were "neither necessary nor proper parties defendant to this cause, and that they were made parties defendant to this cause for the sole and single purpose to prevent a removal by petitioner of this cause to the Circuit Court of the United States for the District of Kentucky, and thereby unlawfully to deprive your petitioner of the right conferred upon it by the Constitution and laws of the United States." The state court overruled the petition for removal. The case was tried in the state court, resulting in a judgment for plaintiff, which was affirmed by the Court of Appeals of Kentucky. In considering the question whether the removal should have been granted by the court below, that court said:

"As, therefore, the appellant Chesapeake & Ohio Railroad Company neither sufficiently alleged nor attempted to prove that the defendants were wrongfully joined as such, the lower court properly refused to make the transfer."

Upon writ of error to the Supreme Court of the United States, respecting this same question, Mr. Chief Justice Fuller said:

"If the liability of defendants, as set forth in that pleading, was joint, and the cause of action entire, then the controversy was not separable as matter of law, and plaintiff's purpose in joining Chalkey and Sidles was immaterial. The petition for removal did not charge fraud in that regard or set up any facts and circumstances indicative thereof, and plaintiff's motive in the performance of a lawful act was not open to inquiry."

In Alabama Great Southern Railway Co. v. Thompson, 200 U. S. 206, 26 Sup. Ct. 161, 50 L. Ed. 441, 4 Ann. Cas. 1147, the railroad company was in like manner joined with its engineer and conductor. The case was removed upon the sole ground that a separable controversy existed between the petitioner and the plaintiff as to whom diversity of citizenship existed. The case reached the Supreme Court upon questions certified by the Circuit Court of Appeals for the Sixth Circuit. In sustaining the state jurisdiction, that court, through Mr. Justice Day, said:

"It is equally well settled that in any case the question whether there is a separable controversy which will warrant a removal is to be determined by the condition of the record in the state court at the time of the filing of the petition for removal, independently of the allegations in that petition or in the affidavit of the petitioner, unless the petitioner both alleges and proves that the defendants were wrongfully made joint defendants for the purpose of preventing a removal into the federal court. * * * In other words, the right to remove depended upon the case made in the complaint against both defendants jointly, and that right, in the absence of a showing of fraudulent joinder, did not arise from the failure of the complainant to establish a joint cause of action. * * * It is to be remembered that we are not now dealing with joinders, which are shown by the petition for removal, or otherwise, to be attempts to sue in the state courts with a view to defeat federal jurisdiction. In such cases entirely different questions arise, and the federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the federal courts of the protection of their rights in those tribunals. * * * The test of such controversy, as this court has frequently said, is the cause of action stated in

the complaint. That is joint in character, and there is no attack upon the good faith of the action. In such case we hold that no separable controversy is presented within the meaning of the act of Congress."

In Illinois Central Railroad Co. v. Sheegog, 215 U. S. 308–316, 30 Sup. Ct. 101, 102 (54 L. Ed. 208), the court said:

"Of course, if it appears that the joinder was fraudulent as alleged, it will not be allowed to prevent the removal. Wecker v. National Enameling & Stamping Co., 204 U. S. 176 [27 Sup. Ct. 184, 51 L. Ed. 430, 9 Ann. Cas. 757]. And, further, there is no doubt that the allegations of fact, so far as material, in a petition to remove, if controverted, must be tried in the court of the United States, and therefore must be taken to be true when they fail to be considered in the state courts. Crehore v. Ohio & Mississippi Ry. Co., 131 U. S. 240–244 [9 Sup. Ct. 692, 33 L. Ed. 144]; Chesapeake & Ohio Ry. Co. v. McCabe, 213 U. S. 207 [29 Sup. Ct. 430, 53 L. Ed. 765]. On the other hand, the mere epithet 'fraudulent' in a petition does not end the matter. In the case of a tort which gives rise to a joint and several liability the plaintiff has an absolute right to elect and to sue the tort-feasors jointly if he sees fit, no matter what his motive, and therefore an allegation that the joinder of one of the defendants was fraudulent, without other ground for the charge than that its only purpose was to prevent removal, would be bad on its face."

[2] This statement from the opinion of Mr. Justice Holmes is frequently urged by counsel as authority for the claim that a mere allegation of fraud without facts other than such as disclose an intention to defeat the federal jurisdiction is insufficient, that there must be present facts which justify a deduction of fraud in its broader legal acceptance; such, perhaps, as would involve moral turpitude apart from the mere effort to defeat the removal act. It must be noted, however, that this case cites with approval the decision in Alabama Great Southern Railway v. Thompson, supra, which has already been considered, and the later case of Wecker v. National Enameling & Stamping Co., 204 U. S. 176, 27 Sup. Ct. 184, 51 L. Ed. 430, 9 Ann. Cas. 757. In the latter case the plaintiff had joined a draftsman in the office of the chief engineer, and in his petition alleged it to be his belief that this draftsman was responsible for the defects in structure of the apparatus causing the injury to such an extent as to render him liable to the plaintiff therefor. At the hearing, upon conflicting evidence, it appeared that there was no reasonable ground for the assumption of such liability on the part of the draftsman, nor for joining him as a party defendant, except for the purpose of defeating, and thereby committing a fraud upon the jurisdiction of the national court. No other fraud was charged or shown. Upon the affidavits filed the court reached the conclusion that, considered with the complaint, they showed conclusively an attempt to defeat the jurisdiction of the federal court by wrongfully joining this individual defendant. Mr. Justice Day said:

"In view of this testimony and the apparent want of basis for the allegations of the petition as to Wettengel's relations to the plaintiff, and the uncontradicted evidence as to his real connection with the company, we think the court was right in reaching the conclusion that he was joined for the purpose of defeating the right of the corporation to remove the case to the federal court. It is objected that there was no proof that Wecker knew of Wettengel's true relation to the defendant, and consequently he could not be guilty of fraud in joining him, but, even in cases where the direct issue of

fraud is involved, knowledge may be imputed where one willfully closes his eyes to information within his reach. * * * While the plaintiff, in good faith, may proceed in the state courts upon a cause of action which he alleges to be joint, it is equally true that the federal courts should not sanction devices intended to prevent a removal to a federal court where one has that right, and should be equally vigilant to protect the right to proceed in the federal court as to permit the state courts, in proper cases, to retain their own jurisdiction."

That such is the proper construction to be placed upon the opinion in the Sheegog Case is further made apparent by the language of the court in Southern Ry. Co. v. Miller, 217 U. S. 209–215, 30 Sup. Ct. 450, 451 (54 L. Ed. 732):

"The petition for removal contained no charge that the attempt to join the defendants was for the purpose of fraudulently avoiding the jurisdiction of the United States court, or with a view to defeat a removal thereto. The case here presented is one in which the record discloses there was an attempt to join, in good faith, the railway company and the individual defendants as for a joint liability in tort."

And in Chicago, Burlington & Quincy Ry. Co. v. Willard, 220 U. S. 413, 31 Sup. Ct. 460, 55 L. Ed. 521, Mr. Justice Harlan said:

"A defendant cannot say that an action shall be several if the plaintiff has a right, and so declares, to make it joint; and to make it joint is not fraudulent if the right to do so exists, even if plaintiff does so to prevent removal."

The inference clearly is that if the plaintiff does so to prevent removal when the right does not exist, and the plaintiff knows it or should know it, the conclusion would be otherwise.

In Jacobson v. Chicago, R. I. & Pac. Ry. Co. (C. C.) 176 Fed. 1004, Judge Willard states the practical rule as follows:

"If the plaintiff stated in his complaint that it was joint, the case could not be removed to the federal court, although he was wrong in his view of the law. The question whether he was right or wrong was one which he was entitled to have tried in the state court. There was one condition, however, imposed upon him, and that was that he should act in good faith. It is probably true that in these cases the employés are always joined for the purpose of keeping the actions out of the federal courts. That, however, is not conclusive upon the question of good faith. Illinois Central Railroad Company v. Sheegog, 215 U. S. 308 [30 Sup. Ct. 101, 54 L. Ed. 208]. If such employés are not fraudulently joined, the case cannot be remanded. In view of the conflict in the authorities, it cannot be said that a plaintiff who claims that the liability of the master and the servant is joint does not present such a claim in good faith. The question of fraud cannot arise upon such a claim only. That question would arise where the defendant denies the truth of the facts stated in the complaint, and so conclusively establishes by the evidence that the relation of master and servant did not exist, or that the claim of the plaintiff was for other reasons false in fact, that the court. is forced to the conclusion that the complaint against the employés could not have been presented in good faith."

It must be conceded that a fraudulent joinder made to defeat the federal jurisdiction will not, if established, be permitted to accomplish its purpose; and the court, upon sufficient application, will look behind mere ingenuity of pleading, to the extent even of scrutinizing the facts alleged upon which the propriety of the joinder is asserted.

[3] In such cases the true rule is that the federal court upon a

proper petition for removal may examine into the merits sufficiently to determine whether the allegations by reason of which a resident defendant may be joined in a state court are fraudulently and fictitiously made for the purpose of preventing removal. More than that, it is its duty to make such examination. It is undoubtedly true that the mere fact that the joinder was made for the obvious or admitted purpose of defeating the jurisdiction of the national courts will not suffice to confer jurisdiction upon them, provided a cause of action exists against the resident defendant joined. Good faith must attend the joinder. It will not be exacted that the action must ultimately succeed, but there must be reasonable ground from the existing state of laws and facts to believe that the cause of action has merit; and it must be stated in good faith. The fraud here under consideration is simply a purpose to deny to the nonresident defendant the right of having his case tried in the jurisdiction to which he would otherwise be entitled by the unwarranted joinder as a codefendant of one against whom the plaintiff knows, or has sufficient reason in law to know, he has no legal ground for suit. This may appear upon the face of the pleading, or it may be skillfully concealed by allegations that are untrue and unjustified. The duty of this court is the same in either case, except that the latter involves inquiry into the facts stated, while the former does not. It is well settled that when it is disclosed, either upon the face of the complaint or in a showing by affidavit, or by oral testimony taken upon plea, that the plaintiff has no cause of action against the employé who is made defendant, the cause is removable by the other defendant if the proper diversity of citizenship exists between that defendant and the plaintiff. Marach v. Columbia Box Co. (C. C.) 179 Fed. 412; Lockard v. St. Louis & San Francisco R. R. Co. (C. C.) 167 Fed. 675; Chicago, Rock Island & Pac. Ry. Co. v. Stepp (C. C.) 151 Fed. 908; Floyt v. Shenango Furnace Co. (C. C.) 186 Fed. 539.

My attention has been called to the case of Enos v. Kentucky Distilleries & Warehouse Co. (C. C. A., Sixth Circuit) 189 Fed. 342. A careful consideration of that case convinces that it is not an authority against the position here taken. Among other things Judge Knappen, speaking for that court, says:

"But the rule which permits a removal to the federal court in case of the fraudulent joinder of defendants whose presence destroys diversity of citizenship cannot be carried to the extent of permitting such fraudulent joinder to be inferred from the fact only that no cause of action is found to exist against any defendant, resident or nonresident, or of permitting removal in a case where the negligence of the corporate defendant can be made out only by proof of negligence of the servant alleged to be fraudulently joined, but against whom a cause of action is stated."

[4] This means, and must mean, to give effect to the decisions of the Supreme Court of the United States upon this subject, as well as to the uniform holdings in federal jurisdictions, that where fraud does not otherwise appear and cannot otherwise be inferred the inquiry into the matter of fraudulent joinder should not go to the extent of a trial of the whole case upon the merits. That case arose in Kentucky, and by statute of that state a servant whose negligent acts cause lia-

bility of the corporation may as matter of right be joined as defendant with the corporation; and this is equally true there whether his act is one of omission which charges his master alone under the doctrine of respondeat superior, or whether it is an act of positive misfeasance. This is made further apparent by a careful analysis of the decisions of the Supreme Court in Illinois Central R. R. Co. v. Sheegog, 215 U. S. 308–315, 30 Sup. Ct. 101, 54 L. Ed. 208, and Chicago, B. & Q. R. R. Co. v. Willard, 220 U. S. 413, 31 Sup. Ct. 460, 55 L. Ed. 521, which are cited and quoted as authority in the Enos Case. Those cases were decided, and must have been decided, as shown by the language of the opinions and by the facts involved, upon the theory that a cause of action was stated against the resident defendants, as was also expressly held in the Enos Case, and that to hold that the joinder of such resident defendants was fraudulent, without more, would be to hold that the entire case was fraudulent, and would, in fact, amount to an indirect method of trying the case against the nonresident defendant upon plea to the jurisdiction. And so the Supreme Court in the Sheegog Case said:

"It seems to us that to allow that to be done in such a petition as is before us would be going too far in an effort to counteract evasions of federal jurisdictions."

But in all these cases the doctrine laid down by the Supreme Court in the case of Wecker v. Enameling & Stamping Co., 204 U. S. 176, 27 Sup. Ct. 184, 51 L. Ed. 430, 9 Ann. Cas. 757, is expressly adhered to. And if, in the examination in this court, therein authorized and approved, it appears either that no case at all is·stated against the resident defendant, or if apparently stated, that fraud has been employed in presenting the facts for the purpose of defeating the federal jurisdiction, then it is the duty of this court so to declare, even though the possible effect might be ultimately to defeat the entire cause of action. Upon no other basis can effect be given to the conceded power of the courts to protect themselves against frauds upon their jurisdiction. Otherwise, nonresident defendants would be at the mercy of the ingenious, but disingenuous, pleader.

[5] In the case at bar the petition for removal sufficiently alleges a fraudulent joinder for the purpose of defeating the· jurisdiction of this court and the facts upon which its contention is based. Plaintiff puts these allegations in issue by his plea to the jurisdiction, and the burden of proof is upon the removing defendant to establish the fact of fraudulent joinder. Enos v. Kentucky Distilleries & Warehouse Co. (C. C. A.) 189 Fed. 342–345; Hunter v. Illinois Central R. R. Co., 188 Fed. 645, 110 C. C. A. 459.

[6] The defendant railroad company assumed this burden, and placed upon the stand the foreman, Murphy, and the plaintiff. The petition stated that the defendant Murphy was at all the times mentioned in the employ of the defendant railway company as foreman in its roundhouse having charge of and superintendence over plaintiff and his fellow servants at work in said roundhouse, and that on the night in question the said foreman,·within the proper scope of his employment, ordered the plaintiff to assist another workman in raising one of

defendant's engines by means of a jack, that the jack slipped, and the lever thereof jerked upwards, and caused the injury complained of. The negligence of the railroad company and foreman was charged as follows:

"That said injury was occasioned by the fault and negligence of defendants in that they furnished plaintiff with said jack which was not in a reasonably safe condition for use by plaintiff, but was in a defective and dangerous condition, in that it was worn and rusty, so that the dogs thereof would not catch and did not catch at the time of said injury, and that said defendants assigned plaintiff to work at the place at which he sustained injury when they knew, or by the exercise of ordinary care could have known, that said jack was defective and unsafe as aforesaid, and that said defendants were also guilty of negligence, in that the place in which plaintiff was assigned to work by said foreman was a place which was perilous and dangerous by reason of the aforesaid unsafe condition of said jack, and that said defendants could, by the exercise of ordinary care, after said foreman saw that plaintiff was in said perilous and dangerous position, have prevented injury to him by ordering said work to cease and by exercising ordinary care in the use of the means at their command to prevent said jack from slipping and injuring plaintiff as aforesaid."

At the hearing Murphy testified: That he was the night foreman at the roundhouse in question. That it became necessary to put a truck spring under an engine, and he ordered an employé named Martin to do this, and told him to get the plaintiff to assist him. That this had to be done by means of jacks. He had no knowledge of any defects in these jacks, and had no duty to repair them. If any were out of order within his knowledge, his custom was to report that fact to the day foreman. He did not pick out the tools on this occasion, nor did he have any direct supervision over the work of putting in the spring other than to know in a general way that the work was being done. That he did, however, issue the order that Martin and the plaintiff should make this repair. The plaintiff states that the foreman, Murphy, told him to assist Martin in this work. That Martin and he proceeded to the house where the jacks were kept, and found most of them in use; the only ones remaining being, perhaps, six or more lying in what the plaintiff describes as a "bad order pile." Plaintiff then testified as follows:

"A. This man Martin, the truck man, and he said that he would see Murphy, and he walked over and talked to Murphy, the roundhouse foreman, and he came back and said we would have to use those jacks because 'we will have to have that engine to-night.' That was No. 3's engine. Q. Was that in your presence, did you hear that conversation? A. I didn't exactly hear the words, but Martin came back and said Murphy said we would have to use them.   *   *   *

"Q. Where was Murphy at the time that you and Martin got the jack, and moved it over to the engine? A. I don't know just exactly where he was at that time; but the time we were talking about the jacks he was right close there.

"Q. You didn't hear what he said, but Martin told you what he said? A. I didn't hear exactly what they said.

"Q. Martin came back and told you what he said? A. Yes, sir."

He further said that the jacks appeared smooth and worn, and that they used three men instead of two, as was customary, thinking it might be safer.

194 F.—33

Upon these allegations of the petition and this evidence, it is claimed by the defendant railroad that the negligence of Murphy, if it was negligence, consisted of nonfeasance and not of misfeasance, for which he was responsible, if at all, to the master alone; that the duty of furnishing a safe place to work and safe appliances with which to work was that of the master; that Murphy had no knowledge of any defect in the appliances, if they were defective, and took no part in the performance of this work other than to issue an order, in his capacity of foreman, that the work be done.

The plaintiff states his conception of the law in the following language:

"Where a servant omits to do that which he should have done his master alone is liable, but, when the servant negligently does what should have been done, both are liable. That is to say, if a servant altogether omits to perform a duty owing to his master, then for failure to perform same the servant is guilty of nonfeasance merely, but if a servant once enters on the performance of a duty to his master, and is negligent in the performance, then he is guilty of misfeasance."

He contends that Murphy, as a vice principal, ordered the plaintiff to work with an unsafe tool with knowledge that it was unsafe, and that this was an act of misfeasance, for which he is personally liable to plaintiff. The rule in this state undoubtedly is that a foreman is not liable in damages for personal injuries sustained by a servant of the master in consequence of the foreman's nonfeasance or mere neglect of duty. This is stated to be well settled in Jewell v. Bolt & Nut Co., 231 Mo. 176–206, 132 S. W. 703, 140 Am. St. Rep. 515; McGinnis v. Chicago, R. I. & P. R. R. Co., 200 Mo. 347, 98 S. W. 590, 9 L. R. A. (N. S.) 880, 118 Am. St. Rep. 661, 9 Ann. Cas. 656; Harriman et al. v. Stowe, 57 Mo. 93. And this is undoubtedly the general rule prevailing in this jurisdiction. Floyt v. Shenango Furnace Co. (C. C.) 186 Fed. 539. Perhaps the rule is best stated by Mr. Mechem in his Law of Agency, paragraphs 569 to 572:

"At common law, an agent is personally responsible to third parties for doing something which he ought not to have done, but not for not doing something which he ought to have done; the agent in the latter case being liable to his principal only. For nonfeasance, or mere neglect in the performance of duty, the responsibility therefor must arise from some express or implied obligation between particular parties standing in privity of law or contract with each other. * * * Misfeasance may involve, also, to some extent the idea of not doing, as where the agent while engaged in the performance of his undertaking does not do something which it was his duty to do under the circumstances, does not take that precaution, does not exercise that care, which a due regard for the rights of others requires."

Where the servant acts as the master's representative, he is not responsible for injuries to his fellow servant resulting from his negligence, unless those injuries are either directly or in effect positive physical wrongs, for which he would be legally liable were he acting without, instead of with, orders. Steinhauser v. Spraul, 127 Mo. 541–560, 28 S. W. 620, 30 S. W. 102, 27 L. R. A. 441. The difficulty arises in the application of the law to the facts in each special case. Here the petition alleges that the foreman knew or could have known by the exercise of ordinary care that the jack was defective and un-

safe. Furthermore, there is an indication in the testimony that the matter was reported to Murphy, and that he insisted that these jacks must be used because they had to have that engine that night. In Missouri it has been held that orders from a superior servant to an inferior may be equivalent in force, effect, and resultant injury to a physical act. Steinhauser v. Spraul, supra; Jewell v. Bolt & Nut Co., supra; Mellor v. Merchants' Mfg. Co., 150 Mass. 362, 23 N. E. 100, 5 L. R. A. 792; Bell v. Josselyn, 3 Gray (Mass.) 309, 63 Am. Dec. 741.

[7] Plaintiff urges that all doubts must be resolved in favor of the jurisdiction of the state court. While this doctrine has been not infrequently announced (Vanderbilt v. Kerr [C. C.] 188 Fed. 537), nevertheless it is not the rule in this jurisdiction (Boatmen's Bank v. Fritzlen, 135 Fed. 650, 68 C. C. A. 288). However, the question here is not what the decisions of this court might be as to liability disclosed by the facts in a trial of this case upon the merits, but whether the defendant has so conclusively established by the evidence that the claim of the plaintiff is so false, in fact, that the court is forced to the conclusion that the complaint against the employé could not have been presented in good faith. Jacobson v. Chicago, R. I. & P. Ry. Co. (C. C.) 176 Fed. 1004. The point to be determined is whether the plaintiff has acted in good faith in asserting that Murphy should legally respond in damages. If he has, then no fraud has been committed, no matter what the ultimate outcome may be. In view of the decisions of the Supreme Court of this state, as well as of the state of the law in other jurisdictions, as disclosed by the decisions of courts of last resort, I do not feel that I am justified in concluding that the plaintiff may not have asserted his claim against the foreman Murphy in good faith, even though he may have had it in mind thereby to prevent the removal of the case to this court.

If this be true, he was strictly within his legal rights, and the motion to remand must be sustained. It is so ordered.