## CHICAGO, BURLINGTON AND QUINCY RAILWAY COMPANY *v.* WILLARD.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 105.  Submitted March 17, 1911.—Decided April 10, 1911.

On every writ of error or appeal the first and fundamental question is that of jurisdiction; first of this court and then of the court below. This question must be asked and answered by the court itself, even when not otherwise suggested and without respect to the relation of the parties to it. *M. C. & L. M. Ry. Co.* v. *Swan*, 111 U. S. 379.

Consent of parties can never confer jurisdiction upon a Federal court,

and this court can of its own motion prevent the Circuit Court from exercising jurisdiction not conferred upon it by statute. *Minnesota* v. *Northern Securities Co.*, 194 U. S. 48.

In the absence of express exemptions in the statute, a statutory permission to a railroad to lease its road does not relieve the lessor from its charter obligations.

Where, as in Illinois, the lessor railroad company remains liable with the lessee company for torts arising from operation, a plaintiff sustaining injuries may bring an action either separately or against both jointly and in the latter case neither defendant can remove on the ground of diverse citizenship if either is a resident of the plaintiff's State.

A defendant cannot say that an action shall be several if the plaintiff has a right, and so declares, to make it joint; and to make it joint is not fraudulent if the right to do so exists, even if plaintiff does so to prevent removal.

Removability of an action depends upon the state of the pleadings and the record at the time of the application.

THE facts, which involve the jurisdiction of the Circuit Court, and the right of a defendant to remove a case thereto from the state court on the ground of separable controversy, are stated in the opinion.

*Mr. Albert J. Hopkins* and *Mr. Chester M. Dawes* for petitioner:

The Circuit Court of the United States for the Northern District of Illinois had full and complete jurisdiction of said cause, and the Circuit Court of Appeals erred in holding that said court did not acquire jurisdiction, in reversing the judgment of the trial court, and in not affirming the judgment of the trial court. *Hatchen* v. *T. W. & W. Ry. Co.*, 62 Illinois, 477; *Atlantic Railroad R. Co.* v. *Southern Ry. Co.*, 153 Fed. Rep. 122; *Kelly* v. *C. & A. Ry. Co.*, 122 Fed. Rep. 286; *Ross* v. *Erie R. R. Co.*, 120 Fed. Rep. 703; *Durkee* v. *Illinois Central R. R. Co.*, 81 Fed. Rep. 1; *Dishon* v. *C., N. O. & T. P. Ry. Co.*, 133 Fed. Rep. 471; *Kentucky* v. *Powers*, 201 U. S. 1, 34; *Dow* v. *Bradstreet Company*, 46 Fed. Rep. 824; *Kelly* v. *Chicago &c.*

*Railway Co.*, 122 Fed. Rep. 286; *Weaver* v. *Northern Pacific Railway Co.*, 125 Fed. Rep. 155; *Railway Co.* v. *Ramsey*, 22 Wall. 322.

The jurisdiction of the Federal court in this case attached to this cause by reason of the course of the plaintiff. It is a question, not of enlarging the jurisdiction of the Federal courts, but whether or not the plaintiff did not concede, by his course, the jurisdiction of the Federal court. *Davies* v. *Lathrop*, 15 Fed. Rep. 565; *Railway Co.* v. *Ramson*, 22 Wall. 322; *Carrington* v. *Florida R. R. Co.*, 9 Blatchf. 467; *Edgerton* v. *Gilpin*, 3 Woods, 277; *Baggs* v. *Martin*, 179 U. S. 206; *In re Moore*, 209 U. S. 490.

*Mr. Arthur J. Eddy, Mr. Emil C. Wetten* and *Mr. P. C. Haley* for respondent:

In Illinois, when an injury results from the negligent operation of a railway, whether by the corporation to which the franchise is granted, or its lessee, both the lessor and the lessee are liable. *Pennsylvania Co.* v. *Ellett*, 132 Illinois, 654; *C. & E. I. Ry. Co.* v. *Meech*, 163 Illinois, 305; *West Chicago St. Ry. Co.* v. *Horne*, 197 Illinois, 250; *C. & W. I. R. R. Co.* v. *Newell*, 212 Illinois, 336.

An action of tort, which might have been brought against many persons or against one or more of them, and which is brought in a state court against all jointly, contains no separable controversy which will authorize its removal by some of the defendants to the Federal Circuit Court, even if they file separate answers and set up different defenses from the other defendants and allege that they are not jointly liable with them, and that their own controversy with the plaintiff is a separate one. *Alabama G. S. R. Co.* v. *Thompson*, 200 U. S. 206; *Powers* v. *Chesapeake &c. R. R. Co.*, 169 U. S. 97; *Louisville &c. Ry. Co.* v. *Wangelin*, 132 U. S. 601; *Plymouth Gold Mining Co.* v. *Amadore &c. Canal Co.*, 118 U. S. 264; *Pirie* v. *Tvedt*, 115 U. S. 43; *Sloane* v. *Anderson*, 117 U. S. 275; *Lyttle* v. *Giles*,

118 U. S. 596; *Torrence v. Shed*, 144 U. S. 530; *Connell v. Smiley*, 156 U. S. 340; *Hyde v. Rubel*, 104 U. S. 407; *Ayres v. Wiswall*, 112 U. S. 192; *Warax v. Cincinnati &c. R. Co.*, 72 Fed. Rep. 640; *Ill. Cent. R. R. Co. v. LeBlanc*, 74 Mississippi, 626.

A defendant has no right to say that an action shall be separate, which a plaintiff elects to make joint. A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his own suit to final determination in his own way. *Pirie v. Tvedt*, 115 U. S. 43.

The question whether there is a separable controversy, warranting a removal, must be determined by the state of the pleadings and the record of the case at the time of the application for removal. *Wilson v. Oswego Twp.*, 151 U. S. 65; *Merchants' Cotton Co. v. Ins. Co.*, 151 U. S. 384.

In determining whether there is a separable controversy, the cause of action is for all the purposes of the suit whatever the plaintiff declares it to be in its pleadings and the allegations of the plaintiff must be accepted as true. Cases *supra* and *Louisville &c. R. R. Co. v. Ide*, 114 U. S. 52; *Deere v. Chicago &c. R. R. Co.*, 85 Fed. Rep. 881; *Offner Case*, 148 Fed. Rep. 201.

Where the pleadings do not on their face show a separable controversy, its existence must be averred in the petition for removal by the statement of the *facts* from which the conclusion arises. *Anderson v. Bowers*, 40 Fed. Rep. 708.

MR. JUSTICE HARLAN delivered the opinion of the court.

This suit originated in one of the courts of Illinois. It is a *joint* action against two railroad corporations—the Chicago, Burlington and Quincy Rail*way* Company of Iowa, and the Chicago, Burlington and Quincy Rail*road* Company of Illinois—to recover damages alleged to have

been caused by the negligence, carelessness and improper conduct of the defendants by their agents and servants, whereby one Harold R. Wellman, the intestate of the plaintiff, was killed. The particular railroad, from the operation of which the injuries in question arose, is located wholly in Illinois and the plaintiff Willard is a citizen of that State. The case involves a question, to be presently mentioned, of the jurisdiction of the Circuit Court. It also involves a question as to the power and duty of an appellate Federal court, where it appears, *from the record*, that a subordinate court has disposed of a case of which it could not properly take cognizance, but in respect to which the parties are silent.

The facts are: The defendant, the Iowa corporation, filed its petition for the removal of this cause to the Circuit Court of the United States. It appears that in November, 1901, the Chicago, Burlington and Quincy Rail*road* Company of Illinois leased, for a period of ninety-nine years from September 30, 1901, to the Chicago, Burlington and Quincy Rail*way* Company of Iowa its line of railway and the rights, privileges, franchises, rights of way, yards, stations, tracks and all appliances thereunto belonging, including in the lease that part of the road in Illinois described in the declaration; that the lessor company also assigned to the lessee company all other real and personal property not above mentioned, and all the rights, privileges, immunities and franchises of the lessor company, except its franchise to be a corporation; that after December 21, 1901, as well as on the day of the alleged injury and death of Wellman, the Iowa company operated and was then operating, controlling and managing the railway lines of the Illinois company. At the time of the injuries complained of neither the Illinois company nor any of its servants controlled, used or operated the railroad engine or cars with which the deceased came into contact and was killed, but that the management, custody,

control and operation of the leased road and property was with the Iowa corporation exclusively; and that there was, it is alleged, a separable controversy between the Iowa company and the plaintiff, citizen of Illinois, which entitled that corporation to have the cause transferred for trial into the Federal court. It was further alleged that as the plaintiff was a citizen of Illinois, the two corporations were *fraudulently and improperly joined* as codefendants *for the purpose of defeating the removal of the case to the Federal court.*

The state court made an order recognizing the right of the Iowa corporation to have the cause removed to the Federal court. Subsequently, in the Circuit Court of the United States, the plaintiff moved to remand the case to the state court; but a few days thereafter he was given leave to withdraw that motion and to amend his declaration. He did not renew the motion to remand, but was given leave to amend his declaration, under which privilege he made extended amendments. But we do not perceive that those amendments affect the conclusion which, in our judgment, must be reached in the determination of the cause. The case remained throughout as a *joint* action against two companies, one of which was a corporation of the State of which the plaintiff was a citizen. What would have been the effect of any amendment made by the plaintiff, in the Circuit Court, eliminating or dismissing the lessor company, the Illinois corporation, altogether as a party defendant—thus leaving the case as presenting issues between citizens of different States only— we have no occasion now to determine. A trial was had in the Circuit Court, between the plaintiff and the two corporations, without objection as to the jurisdiction of that court, and at the conclusion of the evidence the jury, by direction of the court, returned a verdict for the defendants, and a judgment was accordingly rendered for them. The case went to the Circuit Court of Appeals, where that

court, being of opinion that the record disclosed a want of jurisdiction in the Circuit Court of the United States, the judgment was reversed, with directions to remand to the state court. That action was taken by the Circuit Court of Appeals upon its own inspection of the record, and without any suggestion by either party, as to a want of jurisdiction in the Circuit Court. The case is now here upon certiorari.

Had the Circuit Court jurisdiction of this case? As the plaintiff withdrew and did not renew his motion to remand to the state court, but went to trial in the Federal court without objection, was the Circuit Court of Appeals, or is this court, precluded from considering the question of jurisdiction? These questions can have but one answer. It is firmly established by many decisions that in every case pending in an appellate Federal court of the United States the inquiry must always be whether, under the Constitution and laws of the United States, that court or the court of original jurisdiction could take cognizance of the case. The leading authority on the subject is *M. C. & L. M. Railway Co.* v. *Swan,* 111 U. S. 379, 382, where the cases are fully reviewed. In that case the question of jurisdiction was raised in this court by the party at whose instance the subordinate Federal court exercised jurisdiction. But that fact was held not to be decisive; for, said Mr. Justice Matthews, speaking for the court, "on every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." This rule was said to be inflexible and without exception, and has been uniformly sustained by this court. In *Ayers* v. *Watson,* 113 U. S. 594, 598, Mr. Justice Bradley, speaking for the court, and referring to the second section (the removal section) of

the act of 1875, said: "In the nature of things, the second section is jurisdictional, and the third is but modal and formal.    The conditions of the second section are indispensable, and must be shown by the record; the directions of the third, though obligatory, may to a certain extent be waived.    Diverse state citizenship of the parties, or some other jurisdictional fact prescribed by the second section, is absolutely essential, and cannot be waived, and the want of it will be error at any stage of the cause, even though assigned by the party at whose instance it was committed. *Mansfield & Coldwater Railway Co.* v. *Swan,* 111 U. S. 379."    In *Cameron* v. *Hodges,* 127 U. S. 322, 326, it was held to be an express requirement of the statute that the Circuit Court shall remand a case to the court from which it was removed whenever it appears that it is not one of which the Federal court can properly take cognizance. In *Martin* v. *Baltimore & Ohio R. R.,* 151 U. S. 673, 689, after referring to the judiciary act of 1875, Mr. Justice Gray, speaking for the court, said: "Diverse State citizenship of the parties, or some other jurisdictional fact prescribed by the second section, is absolutely essential, and cannot be waived, and the want of it will be error at any stage of the cause, even though assigned by the party at whose instance it was committed."    In *Minnesota* v. *Northern Securities Co.,* 194 U. S. 48, 62, 63, in which both parties insisted upon the jurisdiction of the Circuit Court, the court said: "Consent of [the] parties can never confer jurisdiction upon a Federal court.    If the record does not affirmatively show jurisdiction in the Circuit Court, we must, upon our own motion, so declare, and make such order as will prevent that court from exercising an authority not conferred upon it by statute."    In *Thomas* v. *Board of Trustees,* 195 U. S. 207, 211: "It is equally well established that when jurisdiction depends upon diverse citizenship the absence of sufficient averments or of facts in the record showing such required diversity of citizen-

ship is fatal and cannot be overlooked by the court, even if the parties fail to call attention to the defect, or consent that it may be waived." In *Kentucky* v. *Powers,* 201 U. S. 1, 35, it was said that this court "must see to it that they [the subordinate courts of the United States] do not usurp authority not affirmatively given to them by acts of Congress"—citing *M. C. & L. M. Ry. Co.* v. *Swan,* 111 U. S. 379, 382. In *Perez* v. *Fernandez,* 202 U. S. 80, 100, which came to this court from the District Court of the United States for the District of Porto Rico—this court upon the authority of the *Swan* and other cases cited—held that "where the jurisdiction fails the objection can be raised in this court; if not by the parties, then by the court itself." There are many other authorities to the same effect, but we cite a few of the additional cases: *King Bridge Co.* v. *Otoe Co.,* 120 U. S. 225; *Continental Ins. Co.* v. *Rhoads,* 119 U. S. 237; *Peper* v. *Fordyce, Ib.* 469; *Blacklock* v. *Small,* 127 U. S. 96, 103, 105; *Metcalf* v. *Watertown,* 128 U. S. 586, 587; *Crehore* v. *Ohio &c. Railway Co.,* 131 U. S. 240, 242; *Graves* v. *Corbin,* 132 U. S. 571, 589; *Neel* v. *Pennsylvania Co.,* 157 U. S. 153; *Continental Nat. Bank* v. *Buford,* 191 U. S. 119, 120.

We now come to the question of jurisdiction upon its merits. If, under the statutes relating to the jurisdiction of the Federal courts, and upon the facts as disclosed by the record and litigated, the Circuit Court could not have taken cognizance of the case, then, according to the authorities above cited, it was the duty of the Circuit Court of Appeals, upon its own motion and without regard to the wishes of the parties or of either of them, to reverse the judgment of the trial court, with directions to remand the case to the state court.

We are of opinion that the Circuit Court could not properly take cognizance of this case. The action was brought by a citizen of Illinois against two companies— one a corporation of Iowa and the other a corporation of

Illinois. It is said that as, long before the injury com-
plained of, the Illinois corporation, the legal owner of the
railroad in question, had leased to the Iowa company its
road, with its property, rights, privileges, yards, stations,
etc., appertaining thereto (excepting only the lessor com-
pany's franchise to be a corporation), and was in nowise,
by its agents or servants, in the control of the road or of its
operations at the time the plaintiff's intestate was killed,
the making of that corporation a party defendant in order
to defeat the removal of the case to the Federal court
was fraudulent and improper. A complete answer to this
suggestion is that by the settled law of Illinois at the time
the injury in question was received the lessor company
of Illinois, although it had ceased to operate the road, was
liable with the lessee company in such an action as this.
The cause of action arose in Illinois, and it was entirely
competent for that State in the exercise of its governmental
powers to say that one of its own corporations, operating
a railroad within its limits, by its authority, shall not, by
leasing its road and property, be freed from liability for
damages for which it would have been legally liable under
its charter had it not made such lease.

In *C. & G. T. Ry. Co.* v. *Hart*, 209 Illinois, 414, the Su-
preme Court of Illinois, after referring to Elliott on Rail-
roads, in which it is admitted that the weight of authority
was that the lessor company, unless expressly exempted
by statute, was liable for injuries caused by the negli-
gence of the lessee company, its agents and servants, said:
"We think this court is committed to the view held by
the current of authorities on the question, and, moreover,
that, in sound reason and as the better public policy,
the doctrine should be maintained that the lessor com-
pany shall be required to answer for the consequences of
the negligence of the lessee company in the operation of
the road, not only to the public, but also to servants of
the lessee company who have been injured by actionable

negligence of the lessee company. The charter of the lessor company empowered it to construct this line of railroad and operate trains thereon. It became its duty to exercise those chartered powers, otherwise they would become lost by non-user. The statute authorized it to discharge that duty through a lessee, and it adopted that means of performing the duty which the State had created it to perform. The statute which authorized it to operate its road by means of a lessee did not, however, purport to relieve it of the obligation to serve the public by operating the road, nor of any of the consequences or liabilities which would attach to it if it operated the road itself. (3 Starr & Cur. Stat. 1896, p. 3247.) Statutory permission to lease its road does not relieve a railroad company from the obligations cast upon it by its charter unless such statute expressly exempts the lessor company therefrom. (*Balsley* v. *St. Louis, Alton and Terre Haute Railroad Co.,* 119 Illinois, 68.) While the duty which rests upon the lessor companies to operate their roads is an obligation which they owe to the public, the permission given by the legislature, as the representative of the public, to perform that duty through lessees has no effect to absolve such companies from the duty of seeing that the lessee company provides and maintains safe engines and cars, and that the employés of the lessee companies to whom is entrusted the operation of their roads are competent and that they perform the duties devolving upon them with ordinary care and skill, for upon the character and condition of safety of such engines and cars and on the competency and care of such employés depend the lives and property of the general public. As a matter of public policy such lessor companies are to be charged with the duty of seeing that the operation of the road is committed to competent and careful hands. The General Assembly of this State, though willing to permit railroad companies to operate their lines of road by lessees, refrained from re-

lieving the lessor companies from any of their obligations, duties or liabilities. Therefore it is that though a railroad company may, by lease or otherwise, entrust the execution of its chartered powers and duties to a lessee company, this court has expressed the view [that] the lessee company, while engaged in exercising such chartered privileges or chartered powers of the railroad company, is to be regarded as the servant or agent of the lessor company."

In *West Chicago Street R. R. Co.* v. *Horne,* 197 Illinois, 250, 251, the state Supreme Court said that "the law is well settled that when an injury results from the negligence or unlawful operation of a railway, whether by the corporation to which the franchise is granted or by another corporation which the proprietary company authorizes or permits to use its tracks, both the lessor and the lessee are liable to respond in damages to the party injured"—citing *Pennsylvania Co.* v. *Ellett,* 132 Illinois, 654; *Chicago and Erie Railroad Co.* v. *Meech,* 163 Illinois, 305. In the *Ellett Case,* the language of the court was: "The law has become settled in this State, by an unbroken line of decisions, that the grant of a franchise, giving the right to build, own and operate a railway, carries with it the duty to so use the property and manage and control the railroad as to do no unnecessary damage to the person or property of others; and where injury results from the negligent or unlawful operation of the railroad, whether by the corporation to which the franchise is granted, or by another corporation, or by individuals whom the owner authorizes or permits to use its tracks, the company owning the railway and franchise will be liable." Many cases in Illinois were cited by the state court in support of its view.

It is thus made clear that if the plaintiff had any cause of action on account of the injury in question he could bring a joint action in an Illinois court against the lessor and lessee companies. Whatever liability was incurred

on account of the death of the plaintiff's intestate could, at the plaintiff's election, be asserted against both companies in one joint action, or, at his election, against either of them in a separate action.  In *Powers* v. *Chesapeake & Ohio Ry. Co.*, 169 U. S. 92, 96, 97, which was an action against a railroad company and several of its servants for negligence resulting in an injury alleged tò have been caused by the joint negligence or carelessness of all the defendants, the court, speaking by Mr. Justice Gray, said: "It is well settled that an action of tort, which might have been brought against many persons or against any one or more of them, and which is brought in a state court against all jointly, contains no separate controversy which will authorize its removal by some of the defendants into the Circuit Court of the United States, even if they file separate answers and set up different defenses from the other defendants, and allege that they are not jointly liable with them, and that their own controversy with the plaintiff is a separate one; for, as this court has often said, 'A defendant has no right to say that an action shall be several which the plaintiff seeks to make joint.'  A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his suit to final decision in his own way.  The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings"—citing *Pirie* v. *Tvedt*, 115 U. S. 41, 43; *Sloane* v. *Anderson*, 117 U. S. 275; *Little* v. *Giles*, 118 U. S. 596, 600, 601; *Louisville & Nashville R. R. Co.* v. *Wangelin*, 132 U. S. 599; *Torrence* v. *Shedd*, 144 U. S. 527, 530; *Connell* v. *Smiley*, 156 U. S. 335, 340.

In the case of *Alabama Great Southern Ry.* v. *Thompson,* 200 U. S. 206, 216, 218, after referring to *L. & N. R. R. Co.* v. *Ide*, 114 U. S. 52, in which Chief Justice Waite said that a defendant had no right to say that an action shall be several which a plaintiff elects to make joint, this court,

speaking by Mr. Justice Day said: "The language is used of an action begun in the state court, and it is recognized that the plaintiff may select his own manner of bringing his action and must stand or fall by his election.   If he has improperly joined causes of action he may fail in his suit; the question may be raised by answer and the right of the defendant adjudicated.   But the question of removability depends upon the state of the pleadings and the record at the time of the application for removal, *Wilson* v. *Oswego Township,* 151 U. S. 56, 66, and it has been too frequently decided to be now questioned that the plaintiff may elect his own method of attack, and the case which he makes in his declaration, bill or complaint, that being the only pleading in the case, is to determine the separable character of the controversy for the purpose of deciding the right of removal," citing the above cases, and in addition *Louisville & Nashville Railroad Co.* v. *Ide,* 114 U. S. 52; *Graves* v. *Corbin,* 132 U. S. 571; *East Tennessee, V. & G. R. R.* v. *Grayson,* 119 U. S. 240; *Chesapeake & Ohio R. R.* v. *Dixon,* 179 U. S. 131; *Southern Ry.* v. *Carson,* 194 U. S. 136.   Again, in the same case: "Does this become a separable controversy within the meaning of the act of Congress because the plaintiff has misconceived his cause of action and had no right to prosecute the defendants jointly?   We think in the light of the adjudications above cited from this court, it does not.   Upon the face of the complaint, the only pleading filed in the case, the action is joint.   It may be that the state court will hold it not to be so.   It may be, which we are not called upon to decide now, that this court would so determine if the matter shall be presented in a case of which it has jurisdiction. But this does not change the character of the action which the plaintiff has seen fit to bring, nor change an alleged joint cause of action into a separable controversy for the purpose of removal.   The case cannot be removed unless it is one which presents a separable controversy wholly

between citizens of different States. In determining this question the law looks to the case made in the pleadings, and determines whether the state court shall be required to surrender its jurisdiction to the Federal court."

It results that upon the face of the record the action throughout was proceeded in as a joint action, and that there was no separable controversy, in such an action, entitling the Iowa corporation, as matter of law, to remove the case from the state court. And it cannot be predicated of the plaintiff that he fraudulently and improperly made the Illinois corporation a co-defendant with the Iowa corporation when such a charge is negatived, as matter of law, by the fact that the plaintiff was, as we have seen, entitled under the laws of Illinois, where the cause of action originated and within which the road in question was located, to bring a joint action against the Illinois and Iowa companies. *Ill. Central R. R. Co.* v. *Sheegog,* 215 U. S. 308, 316. He may have preferred to have the case tried in the state court, just as the Iowa corporation preferred the Federal court. But these preferences or motives, not fraudulent or unnatural, were of no consequence. They were immaterial in determining whether the plaintiff had a legal right to bring a joint action against the lessor and lessee companies and to carry it on in that form to a conclusion. The silence of the parties, at the trial, or in the appellate court, on the question of jurisdiction could not, in disregard of the judiciary act, confer authority on the Circuit Court to try the case. The Circuit Court of Appeals, therefore, properly, of its own motion, reversed the judgment of the trial court and sent the case back to the Circuit Court, with instructions to remand it to the state court. Restricting this opinion to the case made by the record before us, and as litigated, and without imagining cases in which the rules herein announced might be difficult to apply, the judgment is

*Affirmed.*