## EGYPTIAN NOVACULITE CO v. STEVENSON et al.

(Circuit Court of Appeals, Eighth Circuit. September 14, 1925.)

No. 6886.

1. Courts ⟐347—Commingling of equitable and legal causes of action, interposing counterclaims and cross-bills between defendants, and setting up of new cause of action in plaintiffs' reply, improper pleading in federal court.

Commingling of equitable and legal causes of action, the interposing of counterclaims and cross-bills between codefendants, and the setting up of a new cause of action by plaintiffs in their reply, held improper pleading in federal court.

2. Appeal and error ⟐185(1)—Duty of appellate court to search record and raise question of jurisdiction whenever necessary, though not raised in trial court.

It is duty of appellate court to search record and itself raise question of jurisdiction whenever necessary, even though such question was not raised in trial court.

**3. Removal of causes ⬤═37—For purpose of removal on ground of diversity of citizenship, federal court will arrange parties according to respective interests, irrespective of formal arrangement in pleadings.**

For purpose of removal on ground of diversity of citizenship, federal court will not be bound by formal arrangement of parties in the pleadings, but will arrange them according to their respective interests in controversy, and in so doing will disregard parties who are not indispensable.

**4. Parties ⬤═29—"Indispensable parties" defined.**

"Indispensable parties" are persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without affecting that interest, or leaving controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Indispensable Party.]

**5. Counties ⬤═196(6)—County and gravel company both indispensable parties and parties adversary to plaintiffs in suit by taxpayers to cancel contracts between them.**

In an action brought under Mo. Rev. Stat. 1919, § 9508, to cancel contracts between gravel company and county, *held* that both gravel company and county judges with whom contracts were made were indispensable parties to suit, their rights being affected by decree sought, and were both properly aligned as parties adversary to plaintiffs in such suit, despite fact that county would gain financially if plaintiffs were successful in having contracts canceled.

**6. Removal of causes ⬤═31—Where county was properly aligned with gravel company as party defendant in suit by taxpayers to cancel contract between them, federal court had no jurisdiction on ground of diversity of citizenship.**

In action under Mo. Rev. Stat. 1919, § 9508, brought by taxpayers to cancel contract between county and gravel company for lack of consideration and bad faith, *held* that federal court had no jurisdiction on ground of diversity of citizenship, where county was properly aligned with gravel company as party defendant.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Separate suits by C. W. Stevenson and others, 50 or more resident, solvent, and responsible taxpaying citizens of New Madrid County, Mo., against the Egyptian Novaculite Company, a corporation, formerly Egyptian Gravel Company, and others, for the cancellation of two contracts made by defendant with New Madrid County, wherein county judges who executed contracts with the Gravel Company were made defendants in each suit. Cases removed to the United States District Court for the

Eastern District of Missouri, and suits consolidated. The Novaculite Company filed a cross-bill and counterclaim against codefendant County, and the County filed cross-bill and counterclaim against the Novaculite Company. From a decree canceling contracts and dismissing counterclaim and cross-bill of Novaculite Company, the latter appeals. Decree reversed, and case returned to trial court, with instructions to remand to state court.

Robert L. Ward, of Caruthersville, Mo., and Bennett C. Clark, of St. Louis, Mo. (Samuel W. Fordyce, Jr., Thomas W. White, and Fordyce, Holliday & White, all of St. Louis, Mo., on the brief), for appellant.

James A. Finch, of New Madrid, Mo., (Thomas Gallivan, of New Madrid, Mo., on the brief), for appellees.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. This is a suit (consolidated of two) brought by the appellees, hereafter called plaintiffs, for cancellation of two contracts made by appellant (under its former name Egyptian Gravel Company), hereafter called novaculite company, with New Madrid county, Mo., hereafter called the county.

The contracts bore date, respectively, February 25, 1919, and November 1, 1920, were executed on behalf of New Madrid county in accordance with a statute of Missouri by the presiding judge and two other judges of the county court. The contracts provided for the purchase by the county from the Egyptian Gravel Company of a large quantity of road material called novaculite. The second contract was intended to supersede the first, in case certain specified conditions were fulfilled.

While the contracts were being performed, the two suits above mentioned were commenced in the state circuit court of New Madrid county, Mo., under section 9508, Mo. Rev. Stat. 1919, which reads as follows:

"*County Contracts to be Inquired Into on Petition,* etc.—Whenever any fifty resident, solvent and responsible taxpaying citizens of any county in the state shall have good reason to believe, and do believe, that any contract made and entered into by the county court of the county, with any person or corporation, affecting or concerning any public building, lands, moneys or property of the county in any manner whatever, or any extension of any such contract, was not made

and entered into in good faith, or for a just consideration, and with due regard for the best interest of the county, or that any such contract previously entered into has not been carried out by the parties thereto in good faith and according to the terms of any such contract, they may bring a suit in the circuit court of any such county, praying that the matter may be inquired into, and thereupon the circuit court shall make a full investigation of the matters alleged, and shall have power to set aside, reform or cause to be enforced any such contract, or any extension of any such contract, as the court shall deem best under the law and the facts. Should the petitioners fail to sustain their petition, they shall pay the costs; and all such proceedings shall be governed by the law relating to civil practice in circuit courts. The said petition shall be filed in the office of the clerk of the circuit court of said county; and thereafter the death, removal or disability of any one or more of such petitioners or plaintiffs shall not abate or affect the said suit."

The complaints alleged the making of the contract, and that the plaintiffs had good reason to believe, and did believe, that the contracts were not made and entered into in good faith or for a just consideration and with due regard for the best interest of the county. The county judge who executed the contracts, and the novaculite company, were all made defendants in each of the two suits.

The novaculite company in due time removed the two suits to the United States District Court for the Eastern District of Missouri on the ground of diversity of citizenship and requisite amount involved. It alleged in its petition for removal that the interests of the county and of the individual defendants were all adverse to the interests of the novaculite company, and that therefore such defendants should be aligned with the plaintiffs, thus creating diversity of citizenship. After removal, the two suits were consolidated.

In the federal court the pleadings were completed as follows: The novaculite company filed an answer and afterward an amended answer, denying the allegations of the bill and setting up a so-called cross-bill and counterclaim against the county. In this pleading it alleged that the county had breached the contracts and that the novaculite company had been damaged in the sum of $100,000, for which amount judgment was asked. The defendant county filed an answer and afterward an amended answer, counterclaim, and cross-bill to the amended answer, cross-bill, and counterclaim of the novaculite company, setting up in said counterclaim and cross-bill new grounds for cancellation of the two contracts, and alleging further that the county had advanced to the novaculite company moneys over and above the value of the material received under the contracts, amounting approximately to $30,000, for which sum the county demanded judgment against the novaculite company. The plaintiffs filed a reply to the amended answer, cross-bill, and counterclaim of the novaculite company, setting up the new alleged grounds for canceling the contracts which had been set up by the county.

It is apparent that when the pleadings were thus completed, there were various controversies between the parties: (1) A statutory suit, equitable in its nature, by the 50 taxpayers, plaintiffs, seeking cancellation against the parties to the two contracts; (2) a claim, legal in its nature, by the novaculite company against the county, but not against the 50 plaintiffs, for breach of the two contracts; (3) a claim by the county against the novaculite company, that the contracts were void for several alleged reasons, and asking for cancellation, and further asking a return of moneys advanced over and above the value of materials received; (4) a claim by the plaintiffs against the novaculite company that the contracts were void and should be canceled on grounds entirely outside of the statute upon which their bill was based.

The novaculite company, while defending itself against the charges made by the plaintiffs, thus sought to litigate a cause of action with its codefendant, the county. The county, while protesting in its answer that the novaculite company could not do this in the instant suit, yet itself sought to litigate new causes of action of its own against the novaculite company. And the plaintiffs, whose authority to sue was limited strictly by the statute, sought to litigate with the novaculite company issues wholly outside of the provisions of the statute.

In his decision, the trial judge referred to this state of the pleadings as follows: "The court has had a great deal of difficulty on account of the peculiar nature of the pleadings in the case. The pleadings are wholly anomalous. So far from being orderly, they may be said to be disorderly." Nevertheless, the court decreed cancellation of the contracts, dismissed the counterclaim and cross-bill of the novaculite company, and declined to pass upon the counterclaim and cross-bill of the county against the novacu-

lite company, for the return of moneys advanced.

[1] With the trial court's criticism of the pleadings we are in full accord. The commingling of legal and equitable causes of action such as was here attempted; the interposing of so-called counterclaims and cross-bills between the two defendant companies; the setting up by plaintiffs of new causes of action in their reply, were all examples of improper pleading in the federal court. We are further of the opinion that the criticism should have been extended to the practice which obtained and that the case should have been remanded to the state court for lack of jurisdiction.

There may be doubt whether the federal court had jurisdiction of the subject-matter of the suit; whether the whole statutory proceeding was not one over which the state circuit court had exclusive jurisdiction.

It is to be noted that the statute vests in the state circuit court a general supervisory power over contracts made by the county. This power is to be exercised in a suit brought by 50 solvent taxpayers of the county. The statute provides that "the circuit court shall make a full investigation of the matters alleged." Power is granted to the state circuit court to "set aside, reform or cause to be enforced any such contract * · · as the court shall deem best under the law and the facts."

Had the federal court, sitting as a court of equity, inherent power to carry out these provisions of the statute? Did the Legislature of the state of Missouri intend to confer such power on the federal court? Could the federal court become the recipient of such a grant of power? We do not find it necessary to answer these inquiries. We pass to the question of jurisdiction as dependent upon diversity of citizenship.

[2] This question of jurisdiction was apparently not raised in the trial court, and it has not been raised here; but it is nevertheless the duty of the appellate court to search the record and itself raise the question of jurisdiction whenever necessary. In the case of M. C. & L. M. Ry. Co. v. Swan, 111 U. S. 379, 382, 4 S. Ct. 510, 511 (28 L. Ed. 462, 463), the court said:

"It is true that the plaintiffs below, against whose objection the error was committed, do not complain of being prejudiced by it; and it seems to be an anomaly and a hardship that the party at whose instance it was committed should be permitted to derive an advantage from it; but the rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception, which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it."

See, also, C., B. & Q. R. R. Co. v. Willard, 220 U. S. 413, 31 S. Ct. 460, 55 L. Ed. 521; Elliott v. Empire Natural Gas Co. (C. C. A. 8) 298 F. 299; Carpenter v. Carden (C. C. A.) 294 F. 515.

The jurisdictional question which arises upon this record is, Did the requisite diversity of citizenship exist? On the face of the bill it did not. The plaintiffs were citizens of Missouri; the defendants, except the novaculite company, were also citizens of Missouri. It was claimed by the novaculite company in its petition for removal that all of its codefendants should be aligned with the plaintiffs. This was apparently acquiesced in by those defendants.

[3] It is the rule that, for purposes of removal on the ground of diversity of citizenship, the federal court will not be bound by the formal arrangement of parties in the pleadings, but will arrange them according to their respective interests in the controversy, and in so doing will disregard parties who are not indispensable. Foster's Federal Practice (6th Ed.) vol. 3, p. 2897; Removal Cases, 100 U. S. 457, 468, 25 L. Ed. 593; Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514; Carson v. Hyatt, 118 U. S. 279, 286, 6 S. Ct. 1050, 30 L. Ed. 167. See, also, Hamer v. N. Y. Rys. Co., 244 U. S. 266, 274, 37 S. Ct. 511, 61 L. Ed. 1125.

Two questions therefore arise: First, were the defendants other than the novaculite company indispensable parties? Second, were they adversary parties to the plaintiffs?

In considering these questions we must not lose sight of the character of the two original suits. The object of those suits was to cancel the two contracts made by the novaculite company with the other defendants. The grounds of cancellation were: (1) That the contracts were not made in good faith; (2) that the contracts were

without consideration and not for the best interest of the county.

There is no presumption that any of the parties to the contracts would maintain that they were not made in good faith or that they were made without consideration and not for the best interest of the county. There is nothing in the record to show that any of the parties to the contracts took such a position. The 50 plaintiffs in their reply denied that they were acting in privity with the county. The county itself set up in its amended answer to the amended answer and cross-bill of the novaculite company several grounds for the cancellation of the contracts, but did not set up lack of good faith or want of consideration.

[4] Indispensable parties have been defined as "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." Shields v. Barrow, 17 How. 130, 139, 15 L. Ed. 158. And the court added, "A bill to rescind a contract affords an example of this kind."

In State of Missouri v. New Madrid County (C. C.) 73 F. 304, the county, one of the defendants, was held to be a necessary party and adverse to the plaintiff in a suit by the state on behalf of the school board of the county to set aside conveyances fraudulently and improvidently made. The case was remanded after removal by nonresident defendants.

In Broadway Insurance Co. v. C. G. W. Ry. Co. (C. C.) 101 F. 507, the lumber company, one of the defendants, was held to be a necessary party and adverse to the plaintiff in a suit by the insurance company to enforce the right of subrogation to recover from the defendant railway company for loss by fire sustained by the lumber company on account of negligence of the railway company. The case was remanded after removal by the railway company, a nonresident corporation, because the insurance company, and the lumber company were citizens of the same state.

In Barth v. Coler, 60 F. 466, 9 C. C. A. 81, the sheriff, one of the defendants, was held to be a necessary party and adverse to the plaintiff in a suit by Barth, the owner of an equity of redemption in certain lands, to set aside certain deeds by the sheriff, who acted as trustee in executing a power of sale in a mortgage, and who had made the deeds to his codefendant Coler, a nonresident. The case was remanded after removal by the nonresident Coler, because Barth and the sheriff were citizens of the same state.

In New Jersey Central Railroad v. Mills, 113 U. S. 249, 5 S. Ct. 456, 28 L. Ed. 949, the Central Railroad Company of New Jersey was held to be a necessary party and adverse to the plaintiffs in a suit by stockholders of the company against it and a Pennsylvania railroad company to set aside a lease between the two companies made in fraud of the rights of the plaintiffs. The case was remanded after removal by the nonresident railroad company, because the New Jersey company and plaintiffs were citizens of the same state.

A like ruling was made in East Tennessee etc. Railroad Co. v. Grayson, 119 U. S. 240, 244, 7 S. Ct. 190, 30 L. Ed. 382, a very similar suit.

In Peper v. Fordyce, 119 U. S. 469, 7 S. Ct. 287, 30 L. Ed. 435, Latta, one of the defendants, was held to be a necessary party and adverse to plaintiff Fordyce in a suit by him as assignee in insolvency of one Moore, who had conveyed land to Latta in trust to secure a debt owing by Moore to Peper. The suit was brought to obtain cancellation of the deed to Latta upon the payment of the amount to Peper. The case was remanded after removal by the nonresident Peper, because Latta was a resident of the same state as the plaintiff.

In Redfield v. B. & O. R. Co. (C. C.) 124 F. 929, 931, the Staten Island Company, one of the defendants, was held to be a necessary party and adverse to the plaintiff, a stockholder of the company who had brought suit against the company and the B. & O. R. Co., a nonresident company, to redress a fraud on the Staten Island Company and the minority stockholders alleged to have been committed collusively by the two companies. It was held that the Staten Island Company could not be aligned with the plaintiff, and that the court had no jurisdiction, because the Staten Island Company and the plaintiff were citizens of the same state.

In Venner v. Great Northern Railway Co., 209 U. S. 24, 32, 28 S. Ct. 328, 52 L. Ed. 666, the Great Northern Railway Company, one of the defendants, was held to be a necessary party and adverse to the plaintiff in a suit by Venner against the company and its president to compel the latter to account for profits made by him through alleged wrongful joint acts of himself and the company. It was held that the removal could

not be defeated by the plaintiff's claim that the defendant company should be aligned with himself.

See, also, MacGinniss v. Boston, etc., Mining Co., 119 F. 96, 101, 55 C. C. A. 648; Wilson v. Oswego Township, 151 U. S. 56, 14 S. Ct. 259, 38 L. Ed. 70; Crump v. Thurber, 115 U. S. 56, 5 S. Ct. 1154, 29 L. Ed. 328; St. L., etc., Ry. Co. v. Wilson, 114 U. S. 60, 5 S. Ct. 738, 29 L. Ed. 66; Scoutt v. Keck, 73 F. 900, 20 C. C. A. 103; Rust v. Brittle Silver Co., 58 F. 611, 7 C. C. A. 389.

[5] Tried by these tests, the defendants named as such in the original bill were indispensable parties. They were parties to the original contracts. Their rights as such parties would be affected by the decree sought. That decree, if plaintiffs prevailed, would establish the bad faith or incompetence of those acting for the county in making the contracts, and would also wipe out all interests of the county in the contracts. The nature of the charges against the defendants was such as to align the county with the novaculite company rather than with the plaintiffs. The fact that the county would gain financially, if the plaintiffs were successful in having the contracts canceled, is not the test and is not material. Venner v. Great Northern Railway Co., 209 U. S. 24, 32, 28 S. Ct. 328, 52 L. Ed. 666. Our conclusion is that the defendants who were sought to be aligned with the plaintiffs were not only indispensable parties to the suit, but were also parties adversary to the plaintiffs, and were properly aligned as designated in the bills.

[6] Such being the situation, the cases were improperly removed, and the federal court had no jurisdiction.

The decree is reversed, and the case is returned, with instructions to the trial court to remand it to the state court. Costs in this court and in the trial court to be divided equally between the novaculite company and the county. Hancock v. Holbrook, 112 U. S. 229, 5 S. Ct. 115, 28 L. Ed. 714.