**Michael K. HARRISON, Plaintiff,**

v.

**Howard PYLE, Defendant.**

**No. CV–R–84–460–ECR.**

United States District Court, D. Nevada.

June 24, 1985.

Michael K. Harrison, in pro. per.

Brian McKay, Atty. Gen. by Robert Kirkman, Deputy, Carson City, Nev., for defendant.

ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff Michael K. Harrison, an inmate in the Northern Nevada Correctional Center in Carson City, Nevada, brings this action pursuant to 42 U.S.C. § 1983. Arguing a denial of his due process rights, he alleges that at his prison disciplinary hearing on a charge of assault against another inmate: 1) the reporting officer was not present; 2) he was not allowed to call witnesses on his own behalf; 3) he was not allowed to question adverse witnesses; 4) he was found guilty and sentenced to fifteen days punitive segregation without being credited for time served in punitive segregation prior to the hearing; and 5) he was confined to punitive segregation without his personal property and without a razor or a bar of soap.

Defendant Howard Pyle, the correctional officer chairman of the prison disciplinary committee, moves for dismissal and for summary judgment, pursuant to Fed.R. Civ.P. 12(b)(6) and 56 arguing that Harrison failed to state a constitutional claim.

By order of this Court on December 31, 1984, plaintiff was given an additional 20 days to file affidavits based on firsthand knowledge or other evidence showing a genuine issue of material fact and defendant was given 20 days thereafter to respond with additional evidence or affidavits.

I. *Facts*

Pyle states by affidavit that he presided over the disciplinary hearing on June 29, 1984, at which Harrison was charged with assault against another inmate who suffered physical injuries. Pyle Affidavit at 2. No correctional officers witnessed the altercation and the only eye-witnesses were confidential informants whose identity was not disclosed. *Id.* On June 21, 1984, prior to the disciplinary hearing, Pyle states that:

"... Harrison appeared at a hearing where notification of charges was read to him including his right to call witnesses.

Inmate Harrison was advised in writing of his right to call and confront witnesses. Harrison was also furnished with the reports of the investigating officers at the hearing. Although the reporting officers were not physically present at the subsequent disciplinary hearing on 6/29/84, Harrison was advised at the beginning of the hearing that he had the right to question reporting officers by telephone, and that they were available by telephone. Subsequently, neither inmate Harrison nor his inmate assistant, Donald Allen, # 18498, asked at the June 29, hearing to speak to any of the reporting officers on the telephone. Further, neither Harrison nor Allen asked to call any other witnesses."

*Id.* Pyle states that Harrison told one correctional officer at the time of the June 21, 1984, hearing that he wanted to call witnesses at his subsequent disciplinary hearing but that Harrison failed to name any witnesses. *Id.* The disciplinary committee found Harrison guilty of assault and sentenced him to fifteen days in disciplinary detention, Pyle states. *Id.* at 3. Harrison unsuccessfully appealed this sentence to Warden John Slansky.

Harrison states by several witnessed but unnotarized documents, that we liberally construe as affidavits, that neither he nor Donald Allen (his inmate assistant) were advised at the beginning of the June 29, 1984, hearing of his right to question the reporting officers by telephone. Harrison statement at 1 (attached to Document # 11). Harrison states that at the June 21, 1984, preliminary hearing he informed correctional officers that he wanted to call witnesses, although the names of potential witnesses were not then known to him, and that when he learned the names of these witnesses, Pyle "refused to let me call them." *Id.* at 2. He argues in his opposition that the protections provided by prison procedures were not afforded him but fails to identify which procedures. In addition, Harrison states that he was placed in "punitive segregation" both prior to and following the hearing without being allowed his personal possessions, a razor or a bar of soap. He alleges that constitutes a punishment "not within the limits established by prison procedure." *Id.* at 1, 2.

## II. Standard of Review

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Franklin v. Murphy,* 745 F.2d 1221, 1235 (9th Cir.1984); *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 677 (9th Cir. 1984). The evidence must be viewed in light most favorable to the non-moving party. *Ward by and through Ward v. U.S. Dept. of Labor,* 726 F.2d 516, 517 (9th Cir.1984); *Franklin v. Murphy,* 745 F.2d at 1235. Although the initial burden of showing no issue of material fact is on the proponent, *Int'l. Union of Bricklayers Etc. v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir.1985), the opponent must present some significant probative evidence tending to support his complaint. *Compton v. Ide,* 732 F.2d 1429, 1434 (9th Cir. 1984); *General Business Systems v. North Am. Philips Corp.,* 699 F.2d 965, 971 (9th Cir.1983). He may not rely solely on the allegations in his pleadings. *Franklin v. Murphy,* 745 F.2d at 1235. Where the opponent is pro se, as in the present case, this Court will liberally construe his pleadings. *See Id.*

## III. Whether this action is barred by the Eleventh Amendment

State sovereign immunity, guaranteed by the Eleventh Amendment, is limitation on federal subject matter jurisdiction. Even where neither party has raised the issue affirmatively, this Court has the power and the obligation to consider the issue *sua sponte. Demery v. Kupperman,* 735 F.2d 1139, 1149 (9th Cir.1984); *Chicago Burlington and Quincy Railway Co. v. Willard,* 220 U.S. 413, 418–22, 31 S.Ct. 460, 461–63, 55 L.Ed. 521 (1981). Because Harrison seeks monetary damages, his claims raise an issue of Eleventh Amendment immunity and we are obligated to consider it.

42 U.S.C. § 1983 allows prison inmates to bring suit in federal court against individuals who, while acting under color of state law or authority, deprive the inmate of his federal constitutional rights. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 1147, 50 L.Ed.2d 358 (1979) (reaffirming *Young*). When against an individual in an official capacity, these actions are limited to suits for prospective relief and do not include actions for retrospective monetary damages which ultimately would have to be paid out of state treasuries. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Demery v. Kupperman*, 735 F.2d at 1150. Therefore, Harrison's suit against Pyle acting in his official capacity for monetary relief is barred in this court by the Eleventh Amendment.

If, however, Pyle is sued in his individual capacity for acts committed under color of state law or authority, this Court has jurisdiction under § 1983. *Demery v. Kupperman*, 735 F.2d at 1150; *Heller v. Bushey*, 759 F.2d 1371 (9th Cir.1985). *See Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). A state official is stripped of his official capacity when that official violates federal law and is, thus, subjected *"in his person* to the consequences of his individual conduct." *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) (*quoting Ex Parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Accordingly, the issue presented is whether or not Pyle violated federal law. If he did not, the Eleventh Amendment bars this suit.

IV. *Whether Harrison's allegations state a constitutional deprivation*

Prison disciplinary hearings are not criminal prosecutions, and the full panoply of rights due the criminal defendant does not apply. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). However, prison disciplinary hearings must be governed by mutual accommodation between the needs and objectives of the institution and generally applicable constitutional protections. *Id.* Among those rights afforded the prisoner at a disciplinary hearing are written notice of the charges against him at least 24 hours before the hearing, and a written statement of the evidence relied on by the fact-finders at the hearing and the reasons for any action taken. *Id.* at 564, 94 S.Ct. at 2978. At the same time, prisoners do not have an absolute right to counsel at disciplinary hearings. *Id.* at 570, 94 S.Ct. at 2981. Further, prisoners do not have an unqualified right to call witnesses or to confront and cross-examine adversaries. *Id.* at 567–68, 94 S.Ct. at 2980–81. It is with the latter two that we are concerned in the present case.

A prisoner's right to call witnesses in his behalf at a disciplinary hearing is necessarily a qualified one and can be denied if permitting him to do so would be "unduly hazardous to institutional safety or correctional goals." *Ponte v. Real*, — U.S. ——, 105 S.Ct. 2192, 2197, 85 L.Ed.2d 553 (1985), quoting *Wolff v. McDonnell*, 418 U.S. at 566, 94 S.Ct. at 2979. *See also Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980); *Baxter v. Palmigiano*, 425 U.S. 308, 320–21, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1975). The Supreme Court said:

"[w]e have noted in *Wolff, supra,* and in *Baxter, supra,* that prison disciplinary hearings take place in tightly controlled environments peopled by those who have been unable to conduct themselves properly in a free society. Many of these persons have scant regard for property, life, or rules of order, *Wolff,* 418 U.S. at 561–562 [94 S.Ct. at 2977–78] and some might attempt to exploit the disciplinary process for their own ends."

*Ponte v. Real,* 105 S.Ct. at 2196. Where ordinarily the right to present witnesses and evidence in one's own behalf is "basic to a fair hearing, [the] inmate's right to present witnesses is necessarily circum-

scribed by the penological need to provide swift discipline in individual cases. This right is additionally circumscribed by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Id.* at 2195. Harrison's right to call witnesses, therefore, was a limited one.

■ To prevent arbitrary and capricious actions by prison officials in denying witness requests, and to keep their discretion from being unreviewable, some explanation by the officials for the denial must be given. However, the Supreme Court has held that this explanation may be given contemporaneously at the hearing or later *in camera* to the Court, recognizing that "given the sort of prison conditions that may exist, there may be a sound basis for refusing to tell the inmate what the reasons for denying his witness requests are." *Ponte v. Real,* at 2197.

■ In the present case, Harrison states that his requests to call witnesses at his hearing were denied by officials, while Pyle states that Harrison did not ask to call any witnesses. On this issue, Harrison states an issue of material fact and summary judgment is not appropriate.

■ Harrison also alleges that he was denied the right to confront the reporting officer. In comparison to the right to call witnesses, "confrontation and cross-examination present greater hazards to institutional interests." *Baxter,* 425 U.S. at 321, 96 S.Ct. at 1559 *quoting Wolff,* 418 U.S. at 567, 94 S.Ct. at 2980.

"If confrontation and cross examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls. Proceedings would inevitably be longer and tend to unmanageability."

*Id.* The Supreme Court concluded that "[t]he better course at this time, in a period where prison practices are diverse and somewhat experimental, is to leave these matters to the sound discretion of the pris-

on officials." *Baxter,* 425 U.S. at 322, 96 S.Ct. at 1559 *quoting Wolff,* 418 U.S. at 569, 94 S.Ct. at 2981. Further, prison officials need not provide inmates with written reasons why the privilege of cross-examination was denied. *Id.* (overruling earlier Ninth Circuit rulings to the contrary.) Finally, "[w]e should not be too ready to exercise oversight and put aside the judgment of prison administrators." *Ponte v. Real,* 105 S.Ct. at 2197, *quoting Wolff,* 418 U.S. at 566, 94 S.Ct. at 1559. Harrison has no absolute right to have had the reporting officer present and, thus, Pyle did not violate his rights.

■ Harrison next claims that he was denied credit for time served in punitive segregation. Affidavits from Pyle and Harrison conflict on what kind of segregation Harrison was placed into. Pyle states that Harrison was placed in administrative segregation prior to the hearing and disciplinary detention following his hearing. Pyle Affidavit at 4. Harrison states that he was placed in "punitive segregation" both before and after the hearing. Harrison Statement at 1. Thus, a genuine issue of fact exists as to whether Harrison should be granted time served.

■ Harrison also alleges that when he was placed in "punitive segregation" he was not allowed his personal possessions, a razor or a bar of soap, a punishment which he claims was not within the limits established by prison procedure. He does not state what the procedural limits were. Whether or not the lack of a razor or a bar of soap constitutes unconstitutional confinement is unclear. *Craig v. Hocker,* 405 F.Supp. 656, 666 (D.Nev.1975), sets the standard for what is required when a prisoner is placed in the "hole." Applying those requirements to this case, Harrison presents a genuine issue of fact whether his constitutional safeguards have been violated. Thus, summary judgment is not appropriate.

■ Harrison has requested a preliminary hearing under Fed.R.Civ.P. 12(d). Fed.R.Civ.P. 12(d) requires determination of Fed.R.Civ.P. 12 motions prior to trial,

unless the court orders that the hearing and determination thereof be deferred until the trial. The Court has made its determination prior to trial. All of the arguments by the parties have been fully disclosed to the Court and nothing would be gained by holding a preliminary hearing. Neither side will be prejudiced if a preliminary hearing is not held. *See e.g. Houston v. Bryan,* 725 F.2d 516, 518 (9th Cir.1984). Hence, no preliminary hearing will be held.

On the issue of whether Pyle violated federal law and denied Harrison the right to call witnesses or to question adverse witnesses at the disciplinary hearing, a genuine issue of material fact exists. Thus, summary judgment on this issue is not appropriate.

On the issue of whether Harrison should have been credited for time served prior to the hearing, a genuine issue of fact exists as to whether Pyle violated Harrison's due process rights. Thus, summary judgment should be denied.

On the issue of whether the reporting officer should have been present at the hearing, Pyle did not violate Harrison's rights by denying him a personal confrontation of the reporting officer. Thus, the Eleventh Amendment bars this action and summary judgment should be granted on this issue.

On the issue of whether Pyle segregated Harrison under unconstitutional conditions, a genuine issue of material fact exists. Thus, summary judgment should be denied on this issue.

IT IS, THEREFORE, HEREBY ORDERED that summary judgment is *DENIED* as to:

(1) whether Harrison was allowed to call witnesses;

(2) whether Harrison was allowed to question witnesses;

(3) whether Harrison should have been granted time served prior to the hearing; and

(4) whether Harrison was confined under unconstitutional conditions.

IT IS FURTHER ORDERED that summary judgment is *GRANTED* as to whether Harrison was denied confrontation of any witness.