Lydia COOK [sic] and Terrie
Owens, Plaintiffs,

v.

The CITY OF POMONA, a public corpora-
tion and Does 1–10, inclusive, individual-
ly and in their official capacities, Defen-
dants.

No. CV 94–4297–R.

United States District Court,
C.D. California.

April 11, 1995.

Leo James Terrell, Beverly Hills, CA, for plaintiff.

Arnold M. Alvarez–Glasman, Alvarez–Glasman & Colvin, Montebello, CA, for defendants.

## FINDINGS OF FACT AND ORDER RE: DISMISSAL OF ACTION

REAL, District Judge.

### I. INTRODUCTION

The action was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

Plaintiffs Lydia Cooks ("Cooks") and Terrie Owens ("Owens") seek enforcement of a 1989 settlement agreement between the parties in which the defendant City of Pomona ("Pomona") agreed to actively promote and maintain an affirmative action recruitment and retention program for minorities and women within the Pomona Fire Department ("PFD"). Cooks and Owens allege that Pomona never implemented the affirmative action program and planned to annex the PFD to Los Angeles County in order to avoid compliance with the 1989 agreement. The plaintiffs request a permanent injunction enjoining Pomona from eliminating the PFD or annexing the PFD with Los Angeles County as well as a Court order directing Pomona to comply with the terms of the 1989 settlement agreement. Additionally, plaintiffs pray for compensatory and punitive damages.

On the eve of trial, the Court *sua sponte* dismissed the action for lack of subject matter jurisdiction and lack of standing to seek the equitable relief requested.

## II. PROCEDURAL ISSUES

Prior to calling the venire, the Court admonished counsel of both sides for failing to adequately prepare this matter for trial. Because of inadequate preparation, dispositive threshold issues were left unresolved. Specifically, the Court expressed serious reservations as to whether it had subject matter jurisdiction to proceed in this matter, and whether plaintiffs Cooks and Owens had standing to seek an injunction enjoining the annexation of the PFD with Los Angeles County. These issues should have been thoroughly explored by counsel pursuant to Federal Rules of Civil Procedure and Local Rule 9.4.2. According to the defendant and uncontested by the plaintiffs, the required Local Rule 9 discussion never occurred. *See* Notice of Motion re: Joint Stipulation of Discovery Issues to Be Determined at Hearing 6.

Counsel for the plaintiffs stated that he had complied "to the letter" with the federal and local rules as well as the case management orders issued to the parties by the Court.[1] He claimed that discovery problems arose because no discovery cutoff date had been set. Moreover, matters were complicated by the defendant's failure to respond to plaintiffs' discovery requests or notices of taking depositions. These issues, as well as plaintiffs' own failure to respond to certain defense discovery requests, caused the parties to file a Local Rule 7.15 joint motion to resolve discovery disputes. The motion was set to be heard on February 21, 1995, a week after trial was to begin. Consequently, plaintiffs' counsel filed an *ex parte* application to continue the trial date in order to resolve these problems and complete discovery.

Despite counsel's objections, there are several problems with this chosen course of action. First, the Court never was notified by either side that there was any confusion regarding the discovery cutoff date. The first time this was brought to the Court's attention was during the instant hearing.

Second, counsel is mistaken that there was no discovery cutoff date in this action. Local Rule 9 operates to automatically set a cutoff date absent an order from the Court. Local Rule 9.4.8 requires the parties to "provide for resolution of all outstanding discovery matters with the view that all discovery be completed at least twenty (20) days before the Pre–Trial Conference." The Pre–Trial Conference was scheduled January 9, 1995. Nothing in any of the Court's case management orders altered this procedure or set a discovery cutoff beyond that required by the local rule. In fact, the Court's Notice of Pre–Trial Conference clearly states that

> STRICT COMPLIANCE IS REQUIRED BY THE COURT WITH THE REQUIREMENTS OF LOCAL RULE 9 AND ALL DOCUMENTS REQUIRED THEREIN AND THE FEDERAL RULES OF CIVIL PROCEDURE. FAILURE TO COMPLY WITH THESE RULES MAY LEAD TO DISMISSAL OF THE ACTION.

Exhibit B at 19. Therefore, the parties should have known that discovery was to be completed or else the Court notified of discovery problems by December 20, 1994. There was no compliance with the local rules in this respect.

Third, the parties did not conduct discovery with that cutoff date or, apparently, any cutoff date in mind. Plaintiffs served the defendant with discovery requests for documents and interrogatories on November 28, 1994 and notices for depositions on December 8, 1994. Notice of Motion re: Joint Stipulation of Discovery Issues to Be Determined at Hearing 5. Likewise, defendant did not propound a second request for production of documents or second set of interrogatories until some point in mid-November. *Id.* at 7.

By their own conduct, the parties should have reasonably anticipated by early December that they were not likely to complete discovery by December 20. Instead of making an application for continuing the discov-

---

1. See Exhibits A, B and C for copies of the standing case management orders the Court is- sues to litigants and to which counsel refers.

ery cutoff date, the parties waited until January 13, 1995 to file a joint motion to resolve discovery disputes pursuant to Local Rule 7.15. The Clerk's Office set the hearing for this motion on February 21, 1995, a full week after the trial was to commence. Once again, the parties failed to immediately notify the Court of this problem by filing an application to shorten time. Instead, on February 6, 1995 counsel for plaintiffs filed an *ex parte* application to continue the February 14 trial date, citing the uncompleted discovery as "good cause" for granting the request.

What was not explained to the Court, however, was the "good cause" underlying plaintiffs waiting until November to begin discovery instead of beginning shortly after the early meeting of counsel held on August 12, 1994. Nor did either counsel set forth facts providing the "good cause" behind their failure to notify the Court when it became apparent in early December that the parties were not going to complete discovery before the final Pre–Trial Conference set for January 9, 1995.

 Based on the record, the Court finds that both the plaintiffs and defendant have been dilatory in conducting discovery, in filing pertinent pre-trial motions and applications, in notifying the Court of potential problems that could delay the start of trial, and in complying with the Federal Rules of Civil Procedure 6(b) and 26(f) and Local Rules 9 and 10. Moreover, no "good cause" has been established that would justify further delay in this matter. Therefore, the Court DENIES plaintiffs' *ex parte* application to continue the trial date.

## III. JURISDICTIONAL ISSUES

The Court then held a hearing on the two jurisdictional issues left unresolved. The first issue was whether the Court had subject matter jurisdiction over the action. The second was whether the plaintiffs had standing to seek an injunction prohibiting Pomona from annexing the PFD with Los Angeles County. Based on the hearing and a review of the record, the Court makes the following findings.

### A. FINDINGS OF FACT.

1. In July 1988, plaintiffs Cooks and Owens, among others, filed a verified charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging the PFD practiced employment discrimination in the manner in which it recruited, hired, tested and promoted firefighters.

2. Cooks and Owens claimed they were denied employment as firefighters because they are African–American and female.

3. At the time of the alleged employment discrimination, the PFD was an agency of defendant Pomona.

4. In January 1989, Cooks, Owens, the Pomona Valley Chapter of the National Association for the Advancement of Colored People ("Pomona NAACP"), other aggrieved individuals and the city of Pomona entered into a settlement agreement that "resolve[d] and dispose[d] of any and all claims" brought before the EEOC. Exhibit D at 25.

5. The EEOC was not a party to the agreement nor did it formally approve the agreement.

6. Any jurisdiction the EEOC had over the matter was relinquished by the parties upon the signing of settlement agreement.

7. The 1989 settlement agreement is a private contract between Cooks, Owens and the other parties mentioned in paragraph 4 on one side and Pomona on the other.

8. The terms of the agreement required the PFD to develop and implement an affirmative action program that would promote the recruitment and retention of minority and female firefighters. *Id.* at 26–31.

9. In exchange for this promise, all the complainants, including Cooks and Owens, agreed to "seek no further relief for claims alleged in or derivative from the facts that serve[d] as a

basis for their charges" against Pomona. *Id.* at 25.

10. The 1989 settlement agreement provides that Cooks and Owens have standing to enforce the terms of the settlement. *Id.* at 26.

11. The 1989 settlement agreement sets forth specific dispute resolutions procedures that must be followed in the event that any party has a "good faith complaint." *Id.* at 25–26.

12. The 1989 settlement agreement does not prohibit Pomona from replacing the PFD with another fire protection and emergency services entity nor does it require that Pomona notify the parties to the agreement if it chooses to do so.

13. In January 1994, the Pomona City Counsel approved a contract wherein the County of Los Angeles agreed to provide fire protection and other emergency related services to Pomona. This resulted in the PFD being disbanded on July 28, 1994.

14. In light of the pending elimination of the PFD, on March 23, 1994 Pomona entered discussions with the Pomona NAACP pursuant to the mandatory dispute resolution procedures set forth in the 1989 settlement agreement at Section 2.5. *Id.* at 25–26.

15. Despite being notified of the "meet and confer" required by the dispute resolution procedures and being invited to participate in the negotiations to amend the 1989 agreement, Cooks and Owens did not take part in the discussions.

16. As a result of these negotiations, Pomona and Pomona NAACP executed the "First Amendment to the Settlement Agreement" wherein Pomona agreed to implement affirmative action programs throughout city government and set aside a reserve of funds to pay claims of past discrimination. Exhibit E.

17. Neither Cooks nor Owens were signatories to the amendment. Cooks and Owens are eligible, however, to make a claim against the reserve fund for damages arising from past employment discrimination, and they have chosen not to file such a claim. *See id.* ¶ 14 at 40–41.

## B. CONCLUSIONS OF LAW.

### 1. COURT LACKS SUBJECT MATTER JURISDICTION

■ Based on these findings, the Court *sua sponte* brought a motion to dismiss for lack of subject matter jurisdiction. A federal court has the power to bring a motion to dismiss for lack of subject matter jurisdiction of its own accord at anytime where jurisdiction is not available to the litigants. Fed. R.Civ.P. 12(h)(3); *Chicago, Burlington & Quincy Ry. Co. v. Willard,* 220 U.S. 413, 31 S.Ct. 460, 55 L.Ed. 521 (1911); *Dyer v. Greif Bros., Inc.,* 766 F.2d 398 (9th Cir.1985). As the following analysis discloses, this Court can not base jurisdiction on either a federal question or diversity.

■ This action is not, as the plaintiffs contend, a suit brought under Title VII of the Civil Right Act. Before a civil action can be filed pursuant to 42 U.S.C. § 2000e *et seq.,* the EEOC and the aggrieved persons must exhaust certain specific procedures set forth in the statute. 42 U.S.C. § 2000e–5(f); *EEOC v. Pierce Packing Co.,* 669 F.2d 605, 607 (9th Cir.1982). Basically, once the plaintiffs have filed a verified charge with EEOC alleging employment discrimination, the EEOC must investigate the claim, and if it determines that reasonable cause exists, it must attempt to reach acceptable conciliation with the offending employer. 42 U.S.C. § 2000e–5(f)(1). "Genuine investigation, reasonable cause determination and conciliation are jurisdictional questions precedent to suit." *Pierce Packing Co.,* 669 F.2d at 608. If after following the proscribed procedures the EEOC, aggrieved persons and the employer reach a conciliation agreement that the employer subsequently breaches, federal courts have jurisdiction to enforce the terms of the conciliation agreement. *Id.*

■ The agreement the plaintiffs are suing upon, however, is not a conciliation agreement negotiated pursuant to the statute.

The EEOC is not a party to this agreement. It did not approve the terms of the agreement. When the agreement was reached by the parties, the EEOC relinquished any jurisdiction it had over the matter. Consequently, the 1989 agreement is merely a settlement agreement voluntarily entered into by the plaintiffs and defendant to resolve the plaintiffs' claims of employment discrimination.

 While the EEOC acted to facilitate the settlement negotiations, this does not make the product of those negotiations a conciliation agreement reached following the procedures of 42 U.S.C. § 2000e–5(f). *See Pierce Packing Co.*, 669 F.2d at 608. In fact, the EEOC has a regulation that encourages early settlement between parties prior to the EEOC's determination as to reasonable cause. 29 C.F.R. § 1601.20. This regulation is consistent with the Congressional intent that voluntary agreements are the preferred means of achieving the objectives of Title VII. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147, 156 (1974). A pre-determination settlement agreement, however, is not the equivalent of a conciliation agreement nor can it be used to " 'leapfrog all jurisdictional requirements when Title VII violations are charged.' " *Pierce Packing Co.*, 669 F.2d at 609 (quoting district court's opinion). Accordingly, the Ninth Circuit has held that federal courts do not have federal question subject matter jurisdiction over an action to enforce a pre-determination settlement agreement. *Id.*

The cases the plaintiffs cited to the Court during the hearing, *Eatmon v. Bristol Steel & Iron Works*, 769 F.2d 1503, 1510–11 (11th Cir.1985); *EEOC v. Safeway Stores, Inc.*, 714 F.2d 567, 573, *reh'g denied*, 720 F.2d 677 (5th Cir.1983), *cert. denied* 467 U.S. 1204, 104 S.Ct. 2384, 81 L.Ed.2d 343 (1984), are inapposite to the facts of this case and do not reflect the law of the Ninth Circuit. *Safeway Stores, Inc.* is a straightforward enforce-ment action by the EEOC of a conciliation agreement. In as much as enforcement of a conciliation agreement is a federal question conferring jurisdiction on federal courts, *Safeway Stores, Inc.* reflects Ninth Circuit law. The instant case, however, does not concern either a conciliation agreement or an enforcement action brought by the EEOC.

Arguably, *Eatmon* could be read to allow a broader grant of jurisdiction in enforcement of written agreements executed in the settlement of Title VII claims. In *Eatmon*, the court of appeals held the district court had jurisdiction over an action based on employees' written releases of their employment discrimination claims against an employer that were not in themselves conciliation agreements. The court of appeals found, however, that those releases were executed because of an underlying conciliation agreement between the employer and the Office of Federal Contract Compliance of the Department of Labor ("OFCC").[2] In that conciliation agreement, the employees that subsequently released claims and then brought suit against Bristol were all individually named in the underlying agreement. The court held, therefore, that the jurisdictional requirements of 42 U.S.C. § 2000e–5(f) were met.

What is fundamental in both *Safeway Stores, Inc.* and *Eatmon* is that there was a conciliation agreement executed between a federal agency and an employer that formed the basis for the subsequent enforcement action. Consequently, these cases merely stand for the proposition that a conciliation agreement reached pursuant to a statute or executive order confers jurisdiction on a federal court to enforce the agreement.

In the instant action, the jurisdictional requirements were not met, nor was there evidence that they were even attempted. Consequently, this lawsuit is merely an action to enforce a private settlement agreement, and therefore governed by California

---

**2.** After completing a routine compliance review of employment conditions at the employer, Bristol Steel & Iron Works, Inc. ("Bristol"), the OFCC determined that Bristol had engaged in discriminatory employment practices. This was a violation of Executive Order 11246, as amend-ed by Executive Order 11375, which prohibited a federal contractor from employment discrimination based on race, creed, nationality or gender. A conciliation agreement was entered into between Bristol and the OFCC.

law. *Ferguson v. Flying Tiger Line, Inc.,* 688 F.2d 1320, 1321–22 (9th Cir.1982) (treating a pre-determination agreement between an employer and employee as a contract dispute governed by California contract law). As such there is no federal question conferring jurisdiction.

Even though this action is really one to enforce a private settlement agreement and is governed by California law, a federal court could have subject matter jurisdiction over this matter based on diversity if the amount in controversy is more than $50,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). In this instance, however, the dispute is between citizens and a municipality of California, thus there is no diversity between the parties. Accordingly, the Court does not have diversity jurisdiction over this lawsuit either.

Based on the foregoing the Court dismisses the action for lack of subject matter jurisdiction.

### 2. PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF

■ The evidence presented does not establish that Cooks and Owens had standing to seek the equitable relief requested, that is, to enjoin the annexation of the PFD with Los Angeles County. While the 1989 settlement agreement confers standing on the plaintiffs to enforce its terms, the agreement does not contain any terms that would prohibit the annexation or elimination of the PFD. Plaintiffs' standing must therefore arise from their claims of racial and gender discrimination. The complaint, however, alleges claims of past discrimination which were discharged by the execution of the 1989 settlement agreement. Subsequent to the 1989 settlement agreement, the plaintiffs did not attempt to gain employment with either the PFD or the County of Los Angeles Fire Protection District. It would be mere speculation to find that the plaintiffs would have suffered further discrimination had they reapplied to the PFD or will suffer discrimination if they apply to the Los Angeles County Fire Protection District. There is no nexus between the claims of past discrimination and the prospective relief sought by the injunction. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Hence, Cooks and Owens lack standing to seek the equitable relief sought for in their complaint.

### IV. ORDER

The Court hereby ORDERS that Case No. CV 94–4297, *Lydia Cook [sic] and Terrie Owens v. The City of Pomona, et al.,* be dismissed without prejudice as to plaintiffs filing suit in state court to enforce the 1989 settlement agreement.

IT IS SO ORDERED.

### EXHIBIT A

United States District Court
Central District of California.

Plaintiff(s),

v.

Defendant(s).

CV–R.

Notice to Counsel

This case has been assigned to the calendar of Judge Manuel L. Real.

Counsel are advised that the Court expects strict compliance with the provisions of the Local Rules and the Federal Rules of Civil Procedure. **NONCOMPLIANCE MAY LEAD TO THE IMPOSITION OF SANCTIONS WHICH MAY INCLUDE THE STRIKING OF PLEADINGS AND ENTRY OF JUDGMENT OR DISMISSAL OF THE ACTION.**

The attention of counsel is particularly directed to Local Rule 9.2. Counsel should also be guided by the following special requirements when litigating cases assigned to Judge Real:

1. *INTERROGATORIES:* See Local Rules.

2. *MOTIONS:* Motions shall be heard on the first and third Monday of each months at 10:00 A.M. unless otherwise ordered by the court. If Monday is a national holiday, the succeeding Tuesday shall be the motion day

and all matters noticed for such Monday stand for hearing on Tuesday without special order or notice.

3. *EX PARTE APPLICATIONS: In the event that a hearing is deemed necessary* by the court, the following schedule shall be observed for applications that comply with Local Rule 7.18:

A. *SCHEDULING:* Mondays at 10:00 A.M. or 1:30 P.M. *ONLY*; Tuesdays through Fridays at 9:00 A.M. or 1:30 P.M. *ONLY.* In order to be heard at the appropriate morning session, papers must be filed no later than 1:30 P.M. on the preceding business day. In order to be heard at 1:30 P.M., papers must be filed by 8:30 A.M. on the day of the hearing.

B. *NOTICE:* Counsel's attention is directed to Local Rule 7.18.1. The moving party shall inform the opposition that they have 24 hours from the date of receipt of the moving papers to file a written opposition.

C. **HEARING: NO HEARING WILL BE HELD UNLESS DEEMED NECESSARY BY THE COURT AND IN SUCH CASE COUNSEL WILL BE NOTIFIED.**

4. *CONTINUANCES*: Counsel requesting a continuance must submit a stipulation with a detailed declaration as to the reason for the requested continuance or extension of time, together with a proposed order. Stipulations, including second and subsequent extensions of time to respond to the complaint, are effective ONLY when approved by this Court. (See amended Local rule 3.11) Any stipulation not in compliance with this order or the Local Rules will automatically be denied without further notice to the parties.

5. *REQUEST FOR CONFORMED COPY:* If the party presenting a document for filing requests the Clerk to return a conformed copy by United States Mail, an extra copy shall be submitted by the party for that purpose accompanied by a postage paid, self-addressed envelope. (See Local Rule 3.5.5)

6. *REMOVED ACTIONS:* Any answers filed in state court *MUST* be refiled in this Court as a supplement to the petition. Any pending motions must be renoticed in accordance with Local Rule 7.

7. *TELEPHONIC HEARINGS:* Judge Real will permit oral argument on calendared motions to be heard telephonically, if (a) all involved parties consent to the telephonic hearing, and (b) the parties anticipate presenting limited argument in addition to the motion papers raising *only* matters not covered in the papers.

The Courtroom Deputy must be notified by the moving party of all counsels' intention to participate in a telephonic hearing by the Wednesday prior to the Monday hearing date.

The telephonic hearing will be held between 9:30 A.M. and 10:00 A.M. on the Monday date originally scheduled by the filing of the motion pursuant to the FRCvP and Local Rules of this Court. The party bringing the motion will initiate the conference call, and when all counsel are present on the line, will contact the Court at 9:30 A.M. Callers will hold on the line until their motion is ready to be heard, at which time they will be patched through to the Court, the case will be called, and the telephonic hearing will commence.

8. *NOTICE OF THIS ORDER:* Counsel for plaintiff, or plaintiff, if appearing on his or her own behalf, is responsible for promptly giving notice of these requirements to defendant's counsel. If this case came to the Court via a Noticed Removal, this burden falls to the removing defendant.

Date _____

/s/ <u>MANUEL L. REAL</u>
UNITED STATES
DISTRICT JUDGE

EXHIBIT B

United States District Court
Central District of California.

Plaintiff,

v.

Defendant.

Case No. _____

Notice of Pre–Trial Conference
Local Rule 9.4

TO: Counsel of Record

This case has been placed on calendar for Pre–Trial Conference in Courtroom 8 of this Court at 11:00 A.M. on _____ pursuant to F.R.Civ.P. 16 and Local Rule 9.4 et seq. Unless excused for good cause each party appearing in this action shall be represented at the Pre–Trial Conference and all pre-trial meetings of counsel by the attorney who is to have charge of the conduct of the trial on behalf of such party. A party appearing pro se shall be obligated to the same attendance required of an attorney for a party.

STRICT COMPLIANCE IS REQUIRED BY THE COURT WITH THE REQUIRE-MENTS OF LOCAL RULE 9 AND ALL DOCUMENTS REQUIRED THEREIN AND THE FEDERAL RULES OF CIVIL PROCEDURE. FAILURE TO COMPLY WITH THESE RULES MAY LEAD TO DISMISSAL OF THE ACTION.

Memoranda of Contentions of Fact and Law shall be filed and served on or before _____.

Pre–Trial Conference Order shall be lodged with the Court on or before _____.

Trial date set _____ at 9:00 A.M.

DATED:

/s/ MANUEL L. REAL
UNITED STATES
DISTRICT JUDGE

EXHIBIT C

United States District Court
Central District of California

Plaintiff(s)

v.

Defendant(s).

Case No. _____

Order Re Trial Preparation

The above-mentioned cause of action is set for trial before the Honorable MANUEL L. REAL. Counsel preparing for trial before this Court shall comply with this Order. Noncompliance will be subject to sanctions.

1. Please rise when addressing the Court. All remarks addressed to the Court should be made from the lectern.

2. Counsel need not stand when the jury enters or leaves the courtroom.

3. Do not walk through the well of the courtroom.

4. Opening statements will be made to the entire jury panel prior to impanelment of the jury.

5. When there are multiple parties (i.e. several defendants), the challenges during *voir dire* will be combined.

6. Counsel should not say "thank you" to the Court after the Court has made a ruling, nor to a witness after the witness has answered a question.

7. Do not repeat the witness' answer when asking a subsequent question.

8. Do not repeat yourself when questioning witnesses.

9. On the morning of the trial, provide the Courtroom Deputy Clerk with the following documents:

a) the original exhibits with the exhibit tags attached and filled out showing the case number, case name, and exhibit number

b) three copies of the Exhibit List—not blue-backed

c) three copies of the Witness List—not blue-backed

d) one bench book of exhibits for the Court, number tagged on the right

10. If the jury is to be shown any of the exhibits, extra copies must be made for each juror.

11. If deposition testimony will be used, those portions which will be offered must be marked, along with any objections, and given to the clerk no later than the day before it will be read. Counsel for the party asking the questions will read the questions; opposing counsel will read the witness' answers.

Dated _____

/s/ MANUEL L. REAL
U.S. DISTRICT JUDGE

EXHIBIT D

United States Equal Employment Opportunity Commission
Los Angeles District Office

In the Matter of: City of Pomona; A.J. Wilson, City Administrator; Thomas Fee, Fire Chief; Dayle Keller, Deputy City Administrator/Operations; and Maxine Marshall, Personnel Supervisor.

Charge No. 340882090.

Settlement Agreement

## 1. *POLICY STATEMENT*

1.1. It is the policy of the City of Pomona ("City") that discrimination against any group or individual by reason of race, color, religion, creed, national origin, sex, political affiliation or opinion, marital status, handicap (non-job related) or with unlawful regard to age is specifically prohibited. As the Fire Department is an agency of the City, this policy applies in all areas of the sworn fire service.

1.2. The Fire Department shall promote equal opportunity and equal treatment through a positive and continuing affirmative action program. Effective recruitment and retention of minorities and women depend on a healthy working environment. To establish that healthy working environment, the Pomona Fire Department ("Fire Department or Department") must have as its goal equal opportunity and treatment in recruitment, hiring, rates of pay, promotion, demotion, transfer, assignment, layoff, termination, education and training opportunities, benefits and all other forms of compensation and conditions and privileges of employment for all employees and applicants for employment.

1.3. This agreement ("Agreement") is intended to facilitate the goal of equal employment opportunity in the Pomona Fire Department.

1.4. The Parties hereto, consisting of the National Association for the Advancement of Colored People ("NAACP"), individual complainants, and the City ("Parties"), recognize that the City must adhere to the Personnel Merit System of the Charter of the City of Pomona. The Parties intend that this Agreement shall be interpreted and implemented so as to conform to the City's Personnel Merit System, insofar as the Personnel Merit System is consistent with federal and state law.

1.5. The Parties agree to cooperate in good faith to carry out the terms of this Agreement. The N.A.A.C.P. agrees to assist the City in the undertakings required to achieve satisfaction of the goals of this Agreement.

## 2. *EFFECT OF THIS AGREEMENT*

2.1. This Agreement is entered into as a settlement of complainants' charges filed with the Equal Employment Opportunity Commission ("EEOC") and Department of Fair Employment and Housing ("DFEH") against the City. This Agreement completely resolves and disposes of any and all claims of the complainants herein of racial or gender discrimination with respect to those matters set forth in their EEOC and DFEH charges.

2.2. Complainants shall seek no further relief for claims alleged in or derivative from the facts that serve as the basis for their charges except to enforce the provisions of this Agreement.

2.3. Complainants agree that this Agreement is fully binding; the City agrees that this Agreement is fully binding.

2.4. It is specifically understood that the City, by entering into this Agreement, is not in any way admitting or acknowledging any violation of law in its relationship with complainants.

2.5. In the event that either party has a good faith complaint ("Complaint") that the duties or obligations agreed to herein are not being implemented or followed, the following procedures shall serve as a process to resolve that Complaint:

2.5.1 The complaining Party shall submit to counsel for the responding Party a written statement setting forth the facts that support its Complaint, and a recommended remedy for the Complaint. The responding Party shall have fifteen (15) calendar days to review the Complaint,

prepare, and deliver a response ("Response") to the complaining Party.

2.5.2 The Parties shall meet and confer in good faith with the specific intent of resolving the Complaint no later than fifteen (15) calendar days after receipt of the Response.

2.5.3 In the event that the Complaint cannot be resolved, the Parties agree to seek mediation of the Complaint. The Parties agree to use the mediation services available from the Community Relations Service of the U.S. Department of Justice or any other mediation service that the Parties may mutually agree upon.

2.5.4 If after exhausting the procedures set forth in 2.5.1–2.5.3, the Complaint cannot be resolved to both Parties' satisfaction, either Party may seek enforcement of this Agreement in any court of competent jurisdiction.

2.6. This Agreement shall remain in effect until the goal set forth in 5.1. is met.

## 3. RECRUITING

3.1. The City shall establish a recruitment plan ("Recruitment Plan"), designed to identify, recruit and retain qualified minority and female applicants for all sworn Fire Department positions.

3.2 The Recruitment Plan shall be established within three (3) months of the execution of this Agreement. The City agrees to suspend further hiring for sworn Fire Department positions until the Recruitment Plan is established. Once a Recruitment Plan is established the City agrees to hire solely pursuant to that plan, except for applicants drawn from the current eligible list as subject to the terms of this Agreement.

3.3. The Recruitment Plan shall be designed to accomplish the following objectives:

3.3.1 To recruit qualified minority and female applicants for all sworn Fire Department job vacancies.

3.3.2 To establish a Recruitment Committee which will assist in recruiting qualified minority and female applicants for all sworn Fire Department job vacancies.

3.3.3 To establish a specific program to inform minorities and women about all sworn Fire Department job vacancies.

3.4. To accomplish those objectives, the Recruitment Plan shall include the following provisions:

3.4.1 The City shall insure that area minority residents are informed of the sworn job opportunities in the sworn workforce by advertising all sworn Fire Department job vacancies. That advertisement shall appear at least once at a date fourteen days prior to the application deadline, except as subject to provisions of Pomona City Code § 2–79.4.

3.4.2 The City shall hold at least one orientation session for prospective applicants for entry-level firefighter positions. The orientation session shall inform prospective applicants of job specifications; format and requirements of written, physical agility and oral examinations; performance standards for passing scores; and background information about the Fire Department.

3.4.3 The City shall advise community-based groups that it seeks minority and female applicants.

3.4.4 The City shall send a representative to the local high schools and junior colleges to recruit applicants for entry-level firefighter positions. That representative shall distribute interest cards and information packets.

3.4.5 The City shall answer applicants' questions, assist in completing applications, and provide materials to guide applicants in preparation for the testing process consistent with the legitimate and fair competitive process.

3.5. The City shall establish a Fire Department Reserve Program designed to recruit minorities and women as an alternative process for the selection of entry-level firefighters.

3.6. The City shall establish a recruitment committee ("Recruitment Committee") consisting of a majority of minority and female representatives who will work with the Fire Chief and City Administrator. The Recruitment Committee shall consist of at least

three representatives, including one black representative, one Hispanic representative, and one female representative. Members shall be nominated by the Fire Chief and appointed by the City Administrator. No member may be removed without the consent of the City Administrator.

3.6.1 The Recruitment Committee shall have two functions: (1) to assist the City in recruiting minority and female applicants for all vacant sworn Fire Department positions; and (2) to monitor implementation and compliance with the Recruitment Plan.

## 4. *TESTING*

4.1. The City shall establish, implement, and adhere to an employee selection·process for all sworn Fire Department positions that facilitates equal opportunity and efficiency throughout the Department.

4.2. Any written examination for selection of entry-level firefighters adopted by the City shall be designed and administered in accordance with the Uniform Guidelines on Employee Selection Procedures (1978), 29 C.F.R. § 1607, as amended.

4.3. Any physical agility examination adopted by the City for selection of entry-level firefighters shall be designed and administered in accordance with the Uniform Guidelines on Employee Selection Procedures (1978), 29 C.F.R. § 1607, as amended.

4.4. Any oral interview process adopted by the City for selection of entry-level firefighters shall be conducted by an interview panel pursuant to guidelines ("Guidelines") promulgated by the Personnel Department.

4.4.1 The Guidelines shall set forth performance areas appropriate for probing by interviewers. The Guidelines shall also set forth a rating sheet to be completed by panel members.

4.4.2 There shall be a minority·or female representative on the oral interview panel.

4.5. The City shall promulgate guidelines governing background investigations for applicants for all sworn Fire Department positions. Those guidelines shall be designed to insure that each applicant is· treated fairly

and afforded an opportunity to refute any derogatory information disclosed by the background investigation, in the event that said derogatory information is considered a reason to deny employment.

## 5. *HIRING*

5.1. It is the goal of the City that by 2005 the sworn Fire Department workforce will reflect the racial and ethnic composition of the City of Pomona, as determined by the then current United States Census.

5.2. To achieve that goal, given existing growth and attrition rates within the sworn Fire Department workforce, the City shall seek to hire pursuant to a timetable under which approximately sixty-six percent (66%) of the persons hired to·the sworn Fire Department workforce during each two year period of the Agreement shall be minority or female appointees.

5.3. The City Administrator will review the banded eligibility list system to insure that all discriminatory barriers to qualified minority and female applicants for all sworn Fire Department positions have been removed.

5.4. Nothing in this Agreement shall be construed to require the City to hire unqualified Fire Department applicants.

## 6. *PROMOTING*

6.1. It is the goal of the City to promote qualified minority and female candidates in proportion to their share of the sworn Fire Department workforce.

6.2. Any written or practical examination adopted by the City for selecting candidates for promotion in the sworn Fire Department workforce shall be designed and administered in accordance with the Uniform Guidelines on Employee Selection Procedures (1978), 29 C.F.R. § 1607, as amended.

6.3. Any panel conducting oral interviews for promotion above the rank of firefighter within the sworn Fire Department workforce shall, as appropriate, include a minority or female interviewer.

6.4. The Department will provide training to assist members of the sworn workforce in promotional opportunities.

6.5. Nothing in this Agreement shall be construed to require the City to promote unqualified Fire Department candidates.

### 7. *MONITORING*

7.1. The City of Pomona shall retain during the period of this Agreement, the records listed below.

7.1.1 All scores, whether written, oral or practical, resulting from the administration of examinations, showing the race and gender of each applicant.

7.1.2 All eligibility lists used for employment in the Department showing the race and gender of each applicant.

7.1.3 Statistics showing the number of persons in the applicant pool, the number of persons employed by the Department as a result of the hiring procedure herein and the racial and sexual composition of the applicant pool and group of persons hired.

7.1.4 Records of recruitment efforts including personnel participation, copies of announcements, locations visited, and responses received.

7.1.5 All scores, whether written, oral or practical, for promotion with the Department for all ranks above firefighter, with the race and gender of each rated applicant.

7.1.6 All eligibility lists utilized for promotion in the Department with the race and gender of each person thereon.

7.2. The City shall submit annually to counsel for the Parties progress reports summarizing the data set forth under 7.1.

7.3. The Parties or their counsel shall meet and confer upon the request of either Party but not less than once a year to assess compliance with and progress under the terms of this Agreement.

### 8. *COMPLIANCE WITH LEGAL REQUIREMENTS*

The Parties have entered into this Agreement with the intent and the belief that it fully is in compliance with the requirements set forth in Title VII of the Civil Rights Act of 1964 and the regulations promulgated

* Party executed duplicate agreement.

thereunder and the interpretation of such law as is demonstrated by judicial decision.

The Parties intend this Agreement to provide the City with the protection established pursuant to section 713 of the Civil Rights Act of 1964, 42 U.S.C. 2000e–12(b). The Parties sought formal approval of this Agreement pursuant to 29 C.F.R. section 1608; however, the Parties have been informed by the Equal Employment Opportunity Commission as a matter of policy that the responsible federal agency no longer approves such agreements.

In the event it is determined by any administrative agency or court of competent jurisdiction that this Agreement does not comply with legal requirements, or if an administrative agency or judicial decision modifying the scope or applicability of Title VII, the Parties agree that the Agreement in whole or part will be reformed to respond to the determination of the agency or court. The Parties agree to meet and confer, pursuant to Section 2.5 to achieve a satisfactory reformation of this Agreement in a manner that comports with the determination of the agency or court.

Complainants:

/s/ Terrie Owens
TERRIE OWENS

* _____
TIM FRANKLIN

/s/ Lydia Cooks
LYDIA COOKS

/s/ Melvin B. White
MELVIN WHITE

/s/ Rev. Walter Cooks Jr.
N.A.A.C.P. Rev. Walter Cooks Jr.

/s/ Christopher Brancart
CHRISTOPHER BRANCART
Attorney for Complainants

Respondents:

/s/ Donna Smith
MAYOR

Attest:

/s/ Elizabeth Villeral Interim
CITY CLERK

Approved as to form:

/s/ [Signature]
CITY ATTORNEY

## EXHIBIT E

United States Equal Employment
Opportunity Commission
Los Angeles District Office

In the Matter of: City of Pomona; A.J. Wilson, City Administrator; Thomas Fee, Fire Chief; Dayle Keller, Deputy City Administrator/Operations; and Maxine Marshall, Personnel Supervisor.

Charge No. 340882090.

## FIRST AMENDMENT TO SETTLEMENT AGREEMENT
### *RECITALS*

1. On or about December 12, 1988, pursuant to City of Pomona ("City") Resolution No. 88–383, the City approved the terms of a Settlement Agreement relating to certain charges and claims filed by Terrie Owens, Tim Franklin, Lydia Cooks, Melvin White, and the National Association for the Advancement of Colored People—Pomona Valley Chapter ("NAACP–Pomona Valley Chapter"), collectively referred to as "claimants," with the United States Employment Opportunity Commission, Los Angeles District Office, charge no. 340882090.

2. Wherein the Settlement Agreement, which was executed both by the City and by the claimants, provides in Section 2.5 of the Settlement Agreement a procedure for attempting to resolve good faith complaints between the parties through a process of dispute resolution.

3. Pursuant to the provisions set forth in Section 2.5 of the Settlement Agreement, the claimants NAACP–Pomona Valley Chapter, Owens and Cooks, filed a formal complaint with the City on or about February 15, 1994. The City offered to the NAACP–Pomona Valley Chapter, Owens and Cooks the opportunity to meet and confer pursuant to Section 2.5.2 of the Settlement Agreement. The City and the NAACP–Pomona Valley Chapter commenced the process of dispute resolution, pursuant to the Settlement Agreement, on or about March 23, 1994. The City and the NAACP–Pomona Valley Chapter utilized the services of Vermont McKinney from the Community Relations Service of the United States Department of Justice.

4. The City has approved the transfer of fire services to the Consolidated Fire Protection District of Los Angeles County ("District") on January 10, 1994.

5. The claimants, specifically the NAACP–Pomona Valley Chapter objects to the transfer of fire services from the City to the District, and alleges that the City is transferring fire services in an "attempt to escape the provisions of the Settlement Agreement." The City denies this allegation, and asserts that the transfer is for the purposes of obtaining a budgetary savings and improved fire protection services for the City.

6. Without admitting fault and in order to avoid further litigation in resolving the various allegations and claims asserted by the respective parties, the City and the NAACP–Pomona Valley Chapter desire to enter into this First Amendment to the Settlement Agreement binding upon the City and the NAACP–Pomona Valley Chapter only.

7. The signatories to this Agreement acknowledge that they have the authority to bind the NAACP–Pomona Valley Chapter and the City to the terms of this First Amendment to the Settlement Agreement. Proof will be provided to the City to verify the approval of this First Amendment by the Executive Committee of the NAACP–Pomona Valley Chapter. The NAACP–Pomona Valley Chapter further represents and warrants that any and all necessary approvals required by the NAACP Regional and National Offices has either been obtained or is not required. The NAACP–Pomona Valley Chapter shall provide written documentation to the City confirming that either approval to this First Amendment has been granted or is not required by the NAACP Regional and National offices.

*FIRST AMENDMENT
TO SETTLEMENT
AGREEMENT*

8. ENFORCEABILITY OF THE SET-TLEMENT AGREEMENT. Without waiving any defenses or claims available at law or equity, each party agrees that the Settlement Agreement is still a viable binding contract between the City and the NAACP–Pomona Valley Chapter. During the term that fire services are provided to the City by the District, the enforcement of the provisions of the Settlement Agreement will be stayed against the City of Pomona, the County of Los Angeles, and the District, except as expressly provided for herein. If fire protection services return to the City, the Settlement Agreement, as amended, shall automatically go into effect pursuant to its terms up to the year 2005, or sooner, if the goals defined in the Settlement Agreement are earlier met by the City.

9. NO ACTION TO PREVENT THE TRANSFER OF FIRE SERVICES AND RELATED LEGAL ISSUE. The NAACP–Pomona Valley Chapter, its agents, officers or legal counsel, and the City, by this First Amendment to the Settlement Agreement, agree to take no further action to block, prohibit, enjoin or otherwise stop the transfer of fire protection services from the City to the District. The City and the NAACP–Pomona Valley Chapter mutually agree to hold the other harmless from any other lawsuits arising from the Fire Service transfer, and agree not to sue the other party in the event litigation is commenced naming as defendants the City and/or the NAACP–Pomona Valley Chapter.

10. RECRUITMENT COMMITTEE. The City shall establish a recruitment committee to be appointed by the City Administrator within the thirty (30) days of the execution of this Agreement. The Recruitment Committee shall be composed of not more than nine (9) nor less than five (5) members, which membership shall be comprised of community based organizations, and organizations within the City of Pomona which represent minority and women rights and interests. The NAACP–Pomona Valley Chapter must be appointed as a representative to the recruitment committee. The Recruitment Committee shall assist and provide policy recommendations to the City Council, City Administrator, City Personnel Department, and City Personnel Commission to identify recruitment, testing and hiring practices, including developing programs that provide technical assistance and preparation for exams, including exams for fire service positions, by minority and female applicants, on behalf of the City, which are consistent with the goals expressed in the Settlement Agreement.

The City and the NAACP–Pomona Valley Chapter agree to work cooperatively in attempting to establish a task force with the County of Los Angeles for the purpose of assisting the County of Los Angeles in its affirmative action recruitment efforts for sworn Fire personnel positions.

11. BUDGET FOR RECRUITMENT EFFORTS AND COMMITTEE PROGRAMS. The City agrees to budget, on an annual basis, the sum of Twenty Thousand and 00/100 ($20,000.00) Dollars, for the purpose of recruiting minority and female candidates for possible employment with the City, and for programs recommended by the Recruitment Committee. The Recruitment Committee will have the opportunity to review the recruitment and affirmative action programs implemented by the City, and will have the further opportunity to recommend to the City and if appropriate, implement, additional programs, above the above budgeted $20,000. Implementation by the City shall be undertaken provided there is a need for such services and programs and provided there are available funds considering the City's then budgetary condition.

12. ANNUAL REPORT. The Recruitment Committee shall prepare an annual report to the City Council and the NAACP–Pomona Valley Chapter outlining the good faith efforts achieved by the parties in furtherance of the Settlement Agreement and this First Amendment, along with a report on other relevant issues of concern to the Recruitment Committee.

13. TRANSFER LIST. The City agrees to present a transfer list of current Pomona

Fire personnel to the District which lists personnel within the various ranks based upon a seniority with the department, and not based upon seniority within rank. The transfer list ranking as specified above, shall not apply to the positions of Fire Chief and Battalion Chief. The transfer list will also place existing Pomona Firefighter Jerome Barnes into the rank of Fire Fighter Specialist.

14. CLAIMANTS' RELIEF FUND. The City agrees to establish a relief fund in the amount not to exceed Eighty Thousand and 00/100 ($80,000.00) Dollars for the purpose of providing monetary relief for minority or women sworn personnel of the Pomona Fire Department or minority or female applicants for a sworn position with the Pomona Fire Department who believe that they were not hired or promoted due to alleged acts of discrimination by the City. The manner of establishing the Relief Fund, and system of processing claims, including the method of informing potential claimants, shall be similar to the process established by the Consent Decree in the matter of *United States of America v. City of Pomona, et al.*, case no. CV–91–6749 JGD (JRx), filed in the United States District Court, Central District of California. The procedures for submitting claims for all potential claimants shall be prepared by the City and the NAACP–Pomona Valley Chapter, and submitted to the Recruitment Committee, City Personnel Commission, and the City Council for review. The City shall implement the claims procedure within sixty (60) days of the execution of this Agreement.

The City agrees that the NAACP–Pomona Valley Chapter may file as a potential claimant, subject to the requirement that damages can be substantiated, in an amount not to exceed Ten Thousand and 00/100 ($10,000.00) Dollars. The City agrees that the NAACP–Pomona Valley Chapter may file a claim under this paragraph as a potential claimant. The NAACP–Pomona Valley Chapter may file a claim for damages and/or costs incurred to enforce the original 1989 Settlement Agreement. Any such claim submitted on behalf of the organization shall be subject to the requirement that damages and/or costs

can be substantiated, in an amount not to exceed $10,000. This provision shall not preclude any other individual as hereinafter set forth, who may also be a member of the NAACP for filing any claim for damages and/or costs incurred in enforcing the 1989 Settlement Agreement. Any claim for costs shall fall within the cap set forth herein of $10,000.

In the event that the amounts established for the claimants' relief fund are not paid to potential claimants in the entire amount of $80,000, any sums remaining in the claimants' relief fund shall be transferred to the Recruitment Committee program budget.

15. HIRING PROCEDURE IF FIRE SERVICES RETURN TO THE CITY. In the event that fire protection services are returned to the City, the City agrees to confer with the Recruitment Committee at least ninety (90) days prior to the initiation of municipal fire protection services and review that all applicable recruitment, testing and hiring practices are consistent with the goals expressed in the Settlement Agreement, as amended. The purpose of the "meet and confer" is to allow the Recruitment Committee, including the NAACP–Pomona Valley Chapter, the opportunity to provide input into the new hiring practices of City's fire personnel in order to meet the terms and conditions of the Settlement Agreement.

16. ELIMINATION OF BANDING SYSTEM. The City agrees to eliminate the "banding" system currently used by the City for establishing personnel hiring lists for all City positions. The City will eliminate the banding system for all civil service positions recruited after the execution of this Amendment. The City of Pomona agrees to insure that all discriminatory barriers to qualified minority and female applicants for all civil service positions be removed. Nothing in this First Amendment to the Settlement Agreement shall be construed to require the City of Pomona to hire unqualified applicants.

17. ATTORNEY'S FEES. The City, without admitting fault or liability, and the interest of resolving the disputes between the NAACP–Pomona Valley Chapter and the City, will agree to pay to Ronald T. Vera,

reasonable attorneys fees in the sum of Twenty Thousand and 00/100 ($20,000.00) Dollars. Any costs incurred by the NAACP–Pomona Valley Chapter will be reimbursed pursuant to the terms and provisions set forth in paragraph 14 of this Agreement.

18. DISMISSAL OF PENDING LAW-SUIT. Upon execution of the First Amendment to the Settlement Agreement, the City agrees to dismiss the NAACP, the NAACP–Pomona Valley Chapter, and Sanford R. Fox from the pending action for Declaratory Relief in the matter of *City of Pomona v. National Association for the Advancement of Colored People, et al.,* case no. CV–94–4213 RMT (Bx).

19. The parties to this First Amendment agree that the terms expressed in this document shall supersede the provisions of the Settlement Agreement, where applicable. The parties to this First Amendment shall follow the procedures set forth in the original Settlement Agreement to resolve any dispute as to the enforcement of this First Amendment or the 1989 Settlement Agreement.

20. All parties executing this First Amendment acknowledge that they have been represented by legal counsel, and freely enter into this Amendment with full knowledge of its content and the consequences, rights and remedies available to them under applicable Federal and State law.

21. The City agrees that upon execution it will implement the terms of this First Amendment. However, in the event that the transfer of Fire Services from the City to the District does not occur, as a result of judicial intervention or other action, all provisions of this First Amendment to the Settlement Agreement not then implemented shall be stayed, and all such terms shall have no force or effect, until further Agreement of the parties or order of a court of competent jurisdiction.

SIGNATURE PAGE

FIRST AMENDMENT TO SETTLEMENT AGREEMENT
NAACP - Pomona Valley Chapter and City of Pomona

Dated: July ___, 1994

SANFORD R. FOX, President
NAACP - Pomona Valley Branch

APPROVED AS TO FORM AND CONTENT:

RONALD T. VERA, Attorney for
NAACP-Pomona Valley Chapter

Dated: July ___, 1994

THE CITY OF POMONA

Mayor

APPROVED AS TO FORM AND CONTENT:

ARNOLD M. ALVAREZ-GLASMAN, City Attorney

I have served as mediator over the formal complaints filed by the above-named parties and acknowledge that this Amendment incorporates the terms of the resolution between the NAACP-Pomona Valley Chapter and the City of Pomona.

Dated: July 3, 1994

Vermont McKinney, Senior Mediator
Community Relations Service
U.S. Department of Justice